**Gregory C. PORTER, Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 97–5007.

United States Court of Appeals, Federal Circuit.

Nov. 9, 1998.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Jan. 20, 1999.*

---

* Mayer, Chief Judge, did not participate in the vote.

Kathleen J. St. John, of Marietta, Georgia, argued for plaintiff-appellee. Of counsel on the brief were Kane St. John ; and Russell O. Wheeler, of Oklahoma City, Oklahoma.

Armando O. Bonilla, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director. Of counsel on the brief were Lt. Col. Steven J. Pecinovsky and Major Joginder Dhillon, General Litigation Division, United States Air Force, of Arlington, Virginia. Also of counsel was Gregory C. Porter, pro se plaintiff-appellant.

Kathleen J. St. John, of Marietta, Georgia amicus curiae for Guy Ferrante.

Before MICHEL, CLEVENGER, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

This appeal presents questions of first impression relating to the authority and duty of civilian boards for the correction of military records. The case involves the Air Force Board for the Correction of Military Records ("Air Board" or "AFBCMR"). The plaintiff and appellee, Gregory C. Porter, was twice passed over, in 1984 and 1985, for promotion to captain in the Air Force, and was honorably but involuntarily discharged in May 1985 under the statutory "up or out" rule. Thinking his initial passover to be the result of a faulty Officer Effectiveness Report ("OER"), Porter applied to the Air Board for correction of his record to exclude the challenged OER from his record, and to be considered again for promotion by another officer selection board. Before the Air Board acted on his application, Porter was passed over for promotion a second time in 1985. The Air Board agreed with Porter that his record contained a faulty OER, and recommended to the Secretary of the Air Force that he be considered for promotion again by Special Selection Boards ("SSBs") convened under the authority set forth in 10 U.S.C. § 628 (1994), on his corrected record. The Air Board, however, did not recommend that Porter's previous passovers be voided. Such a recommendation would have removed the legal basis for Porter's 1985 discharge, resulting in constructive if not actual reinstatement to his pre-discharge rank of first lieutenant and entitlement to back pay and related benefits. The Air Board's unwillingness to make such a recommendation frames the issue for decision in this appeal.

I

Porter argues that the Air Board lacks the authority to refer his record to an SSB under

10 U.S.C. § 628 unless it also recommends that his previous passovers be voided, thus vacating his discharge and entitling him to back pay and related benefits. He bases his argument on his reading of section 628 and on holdings of our predecessor court, the United States Court of Claims, in cases governing the actions of civilian boards for the correction of military records taken at a time before SSBs were created and available to participate in the process of correction of military records. Porter argues that under those holdings the Air Board's recommendation that his record be presented to selection boards constitutes an implicit voidance of his two initial passovers and discharge.

The government argues to the contrary that the Air Board is not required by statute or case law to void initial passovers before recommending consideration by an SSB in every instance, and that no error lies in the Air Board's refusal to void Porter's passovers before recommending his assessment by SSBs. The government takes a more flexible view of the Air Board's powers, under its statutory charter, 10 U.S.C. § 1552 (1994), and under section 628. The government argues that, depending on the circumstances of a given case, the Air Board may correct such records as it deems necessary when recommending that an SSB be convened to replicate the work of the original selection boards that twice passed over a discharged officer. In some instances, such correction may involve voiding the initial passovers, and in other instances the recommended corrections may entail only correction of the record that was laid before the original selection boards. The government argues that the pre-section 628 case law of our predecessor court is inapplicable to the Air Board's authority to recommend referral of a discharged officer's record to an SSB.

After extended litigation before the Air Board and the United States Court of Federal Claims, the Court of Federal Claims agreed with Porter's arguments. It held that the Air Board acted arbitrarily when it referred Porter's case to SSBs without also voiding his initial passovers, with the stated consequences of entitlement to back pay and related benefits. *See Porter v. United States*, No. 91–1008C (Fed. Cl. May 24 & Aug. 6, 1996). The government brings this appeal, over which we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (1994). Because only questions of law are before us, we exercise our review authority independent of the views of the Court of Federal Claims. *See Columbia Gas Sys., Inc. v. United States*, 70 F.3d 1244, 1246 (Fed.Cir.1995).

As is evident from the foregoing and will become more so from the following, the technical aspects of this case and of the underpinnings of our predecessor court's holdings are complex. The core questions for decision, however, are simple: must the Air Board in every instance couple a recommendation to convene an SSB with voidance of previous passovers, and, if not, was the Air Board's recommendation in Porter's case to convene an SSB without voiding his two previous passovers arbitrary, capricious, unsupported by substantial evidence or contrary to law?

Essentially in agreement with the government's arguments in this appeal, we hold that the Court of Federal Claims erred in its assessment of the legal authority of the Air Board. Because the Air Board was authorized to correct Porter's record and recommend use of SSBs to consider Porter's promotion prospects in light of the corrections *without* also recommending voidance of Porter's previous discharge-mandating passovers, Porter is not entitled to back pay and related benefits. His discharge in 1985 was lawful.

II

Porter entered active duty with the Air Force in 1981 and was honorably, but involuntarily, discharged in 1985 under the military's "up or out" requirements after he was passed over twice for promotion from reserve first lieutenant to captain. *See* 10 U.S.C. §§ 627, 631 (1994); Air Force Reg. 36–12 (Oct. 1, 1984). Porter's first passover occurred before the Calendar Year 1984 B ("CY84B") captain promotion board. His second passover resulted from deliberations

by the Calendar Year 1985 A ("CY85A") captain promotion board. Porter contested both passovers to the Air Board. The Air Board determined that a January 1984 OER had unfairly underrated Porter's promotion potential. The Air Board thus recommended to the Secretary of the Air Force that the OER be voided and that two SSBs (for each of the CY84B and CY85A captain promotion boards) convene to reconsider Porter for promotion. The Assistant Secretary of the Air Force, on behalf of the Secretary, accepted the Air Board's recommendation. The SSBs convened in March 1986 and determined that Porter would not have been promoted by either original promotion board even with the corrected records.

In 1988, Porter again applied to the Air Board for the correction of his records, alleging that the removal of the erroneous January 1984 OER had created a prejudicial gap in his record, that his duty titles had been incorrectly listed on some of his reports, and that a 1984 Letter of Evaluation ("LOE") attached to a November 1984 OER and written by the same reviewer as the January 1984 OER, repeated the substance of the January 1984 OER and perpetuated its negative effect. He also questioned whether his records had been properly compared to those of other officers during the review process. For relief, Porter sought "reinstatement" at the rank of captain, with back pay and allowances at that rank. The Air Board denied his application and his subsequent request for reconsideration after concluding that the SSBs had not acted improperly.

Porter began what became an extensive litigation before the Court of Federal Claims when he filed a *pro se* complaint in 1991 that repeated the substance of his allegations before the Air Board and sought back pay and various damages. On the government's motion for summary judgment, the court determined that the gap in Porter's record created by the missing 1984 OER was adequately cured by a letter explaining the gap to the SSBs. *See Porter v. United States,* No. 91–1008C, slip op. at 12 (Fed.Cl. Dec. 30, 1992). However, the court also determined that the

1984 LOE contained errors that were equal in significance and materiality to the errors of the voided OER, that Porter's job history was incorrectly reflected in his records and operated to his disadvantage, and that the government did not rebut several of Porter's allegations regarding procedural errors before the SSBs. *Id.* at 14–26. Deferring to the Air Board, the court declined to order back pay, and instead remanded the case. *Id.* at 27. The court directed the Air Board to reconsider Porter's case and determine whether the 1984 LOE and the misstated duty titles constituted a significant error or injustice, and, if so, whether the errors were harmless because Porter would not have been promoted even with the errors corrected. *Id.* at 27–28, 30. In particular, the court stated that:

> If, on remand, the AFBCMR determines that there were one or more significant errors in the records before the SSB, it shall make whatever recommendations to the Secretary it deems appropriate, including reinstatement, back pay, correction of records (including, but not limited to, voiding the SSB decisions), and another opportunity to be considered by an SSB sitting for the CY 84B and CY 85A selection boards.

*Id.* at 31.

On remand, the Air Board concluded that the misstated duty titles should be corrected and the LOE should be removed from Porter's record. Because the "recommended corrections will materially change the applicant's record," the Air Board recommended that Porter be again considered by two SSBs in place of the original CY84B and CY85A captain promotion boards. However, the Air Board concluded that insufficient evidence had been presented to "demonstrate the existence of probable error or injustice in regard to applicant's request for promotion," and that

> [i]t cannot be conclusively determined whether or not applicant would have been selected for promotion by the selection boards in question. We believe a duly

constituted SSB applying the appropriate promotion criteria is in the most advantageous position to render this determination. We believe applicant's record, to include the above recommended corrections, can receive a fair and equitable consideration for promotion by the SSB process. Therefore, we do not recommend favorable action on his request for promotion.

In essence, the Air Board, composed entirely of civilians, did not consider itself bound to decide the relative merits of Porter's promotion prospects. Instead, it viewed an SSB—composed entirely of military officers—as better qualified to compare Porter's corrected record to the benchmark records that define the promotion threshold of the original selection board. In response to the Air Board's recommendation, the Secretary's designee then ordered that Porter's record, as corrected, be considered again by the two SSBs, acting in lieu of the CY84B and CY85A captain promotion boards. Those SSBs met in November 1993 and both recommended that Porter not be promoted.

The case returned to the Court of Federal Claims on cross-motions for summary judgment. The government asserted that the decisions of the 1993 SSBs show a lack of nexus between the errors that had been corrected in Porter's records and the previous passover decisions: because the 1993 SSBs passed over Porter even on the corrected records, the government asserted that the errors before the earlier selection boards must be harmless. In addition, the government asserted that the 1993 SSBs suffered no defects. Porter's cross-motion alleged that a nexus indeed existed between the errors before the 1986 SSBs and their decisions, and that the 1993 SSBs committed three procedural errors. *See Porter v. United States,* No. 91–1008C, slip op. at 3 (Fed.Cl. Oct. 31, 1994), *as clarified,* No. 91–1008C (Fed.Cl. Dec. 30, 1994).

On the cross-motions, the court ruled that there was no evidence that the 1993 SSBs had acted improperly with regard to two of Porter's alleged procedural errors. *Id.* at 4–

5. As to whether the 1993 SSB proceedings contained inadequate benchmark records that were improperly rescored, as Porter alleged, the court remanded the case once again to the Air Board. The Air Board was ordered to review the full record before the 1993 SSBs to ensure that Porter's nonselections were not arbitrary, capricious, unsupported by substantial evidence, or legally erroneous. *Id.* at 9. In addition, the court determined that the Air Board had impermissibly given the 1993 SSBs the power to determine whether the flawed data before the 1986 SSBs amounted to harmless error, rather than making that determination itself before recommending that the 1993 SSBs decide anew whether Porter should have been promoted. *See id.* at 7–8. The court determined that the Air Board, by referring Porter's case to the SSBs, necessarily voided the original selection boards' passovers and thereby constructively reinstated Porter, thus entitling him to back pay. *See id.* The court therefore ordered that Porter's records be corrected to show reinstatement as of the day of his discharge in 1985 and entitlement to back pay until he is deemed passed over twice by lawful process and lawfully discharged. *Id.* at 9. In reaching its conclusion, the court took its direction from a series of Court of Claims cases involving actions by civilian corrections boards that predated the enactment of 10 U.S.C. § 628. The cases relied on by the court in the December 1992 and October 1994 decisions, as chronologically decided, are *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (Ct.Cl.1979); *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984 (Ct.Cl.1979); *Hary v. United States,* 223 Ct. Cl. 10, 618 F.2d 704 (Ct.Cl.1980); *Evensen v. United States,* 228 Ct.Cl. 207, 654 F.2d 68 (Ct.Cl.1981); and *Engels v. United States,* 230 Ct.Cl. 465, 678 F.2d 173 (Ct.Cl.1982).

The government moved promptly for clarification of the court's October 31, 1994, order, asserting that it would be improper to order Porter's reinstatement in light of the two passover decisions by the 1993 SSBs that were still in effect, although these decisions remained subject to review by the Air Board

for potential procedural flaws pursuant to the court's remand order. In response, the court revised its order, as follows:

> The AFBCMR having failed to do so explicitly, either in 1993 when it vacated the 1986 SSBs' passovers, or in 1985 when it vacated the CY 84B and CY 85A selection boards' passovers, the court assumes that Mr. Porter's records have been corrected constructively to show reinstatement in active duty at the rank of first lieutenant as of August 31, 1985, up until at least six months after his second passover by the 1993 SSB, *see* 10 U.S.C. § 631(a)91, (and longer if the 1993 SSBs' decisions are voided by the Secretary at the recommendation of the AFBCMR, or by this court). The court also assumes that, as the result of such constructive duty, Mr. Porter is entitled to back pay for that period, calculated in accordance with law. If the AFBCMR declines to recognize plaintiff's entitlement to such correction or benefits, the court will exercise its own authority to do so.

*Porter v. United States,* No. 91–1008C, slip op. at 4 (Fed.Cl. Oct. 31, 1994), *as clarified,* No. 91–1008C (Fed.Cl. Dec. 30, 1994). The court thus introduced a legal fiction to the record that Porter's initial two passovers had been voided, when in fact the record clearly reflects the Air Board's refusal to recommend that correction to Porter's record.

On the second remand, the Air Board found that the 1993 SSBs had acted correctly and had not reversibly erred in determining that Porter would not have been promoted by the earlier review boards. The Air Board's conclusions are set forth in a document denominated as "Second Addendum to Record of Proceedings" that details the proceedings at a meeting of the Air Board held on January 11, 1995, when Porter's request for correction of his records was denied.

In particular, the Air Board rejected the court's assumption in its amended order of December 30, 1994, that the Air Board had previously corrected Porter's records to vacate the earlier passovers and had thus con-structively reinstated Porter to active duty with the right to pay. The Air Board explained its position in detail and at length. The heart of the Air Board view is its assertion that the cases relied upon by the court to support its assumed correction of Porter's record have no bearing on a recommendation by the Air Board that an SSB be convened to assess whether an officer should be promoted.

The Air Board explained its view that the statute creating SSBs, 10 U.S.C. § 628 (1994), altered the analytic process by which the Air Board had previously determined whether an officer's records should be corrected to show a recommendation of some promotion. According to the Air Board, nothing in the law prevented it from recommending correction of Porter's record and submission of the corrected record to an SSB without also recommending voidance of his previous passovers, constructive reinstatement and entitlement to back pay. In short, the Air Board asserted the right to recommend further assessment of Porter's qualification for promotion by an SSB without the Air Board itself first making a determination that the errors requiring correction were in fact not harmless to the nonselection decision of a previous selection board. At bottom, the Air Board asserted in the Second Addendum that it was not obligated to conduct the harmless error analysis prescribed by the Court of Federal Claims in its December 30, 1992, order. Although the harmless error test was designed to determine the relative merits for promotion of one officer (here, Porter) over other officers (both those selected and nonselected by the original selection boards), the Air Board had previously determined, in response to the December 30 order, that, in this particular case, it was unable to decide those relative merits on the basis of his corrected record. To the mind of the civilian corrections board, that decision would better be made by military personnel applying the appropriate selection criteria.

To the extent that the government lawyers appearing before the Court of Federal Claims had previously pitched their case in

terms of whether the Air Board had in fact found the errors in Porter's record to be harmless, the Second Addendum made clear that the Air Board did not feel constrained in this case to apply the harmless error test. The legal theory on which the Air Board was proceeding was that the harmless error test, derived from pre-section 628 case law, is inapplicable to Porter's case.

The Air Board also responded to the remand order from the Court of Federal Claims directing the Air Board to decide the merits of Porter's contention of material procedural error concerning benchmarks used by the 1993 SSBs in scoring the pertinent officer records. As Porter understood the contents of the benchmarks used by the 1993 SSBs, his record was better than one of the records of an officer who had been selected by the CY85A captain promotion board. Thus, according to Porter, the 1993 SSB in essence imposed a "supercompetitive" standard, requiring him to outperform a selected officer, as opposed to simply matching the score of a selected officer.

The Air Board initially resisted this remand order on the ground that it might compel it to make a comparative decision as to which candidates were better qualified for promotion, a matter that the Air Board thought was better suited to an SSB decision. The Air Board nevertheless assessed Porter's contention. Even though Porter's record scored better than one of the officers selected by the CY85A captain promotion board, the other attributes of the selected captain's record demonstrated that Porter's record was overall less competitive. The Air Board found that there was "a clear distinction between the quality of the applicant's records and the quality of the benchmark records of the selectees and nonselectees from the original selection boards." The Air Board thus concluded that the procedural error cited by Porter did not undermine the 1993 SSB decision that Porter would have been passed over by the CY85A captain promotion board had his corrected record been before it in the first instance.

The case again returned to the Court of Federal Claims. After briefing and oral ar-gument, the court agreed that the decisions of the 1993 SSBs contained no reversible error. *See Porter v. United States*, No. 91–1008C, slip op. at 7 (Fed.Cl. May 24, 1996). With regard to Porter's contention of procedural error due to improper benchmarks and scoring, the court concluded that "plaintiff's record is not clearly equal or superior to any of the benchmark records of officers selection [sic, selected] for promotion." *Id.* However, the court rejected the government's view of the Air Board's authority (as set forth in the Second Addendum) to recommend use of SSBs without also voiding previous passovers and the government's argument that pre-section 628 case law is inapplicable to this case. *Id.* at 6–7. The court again held that the Air Board's referral of Porter's case to the SSBs entitled him to back pay, because "referring an applicant to an SSB necessarily implies that at least one of his or her pass-overs was invalid, and an officer without two *valid* passovers cannot be discharged." *Id.* at 6 (emphasis in original). The court concluded that Porter had constructively served until the 1993 SSBs properly removed him, and that he should receive back pay for the period from his original discharge until his discharge following the nonselection decisions of the 1993 SSBs. *Id.* at 7.

The government appeals, arguing that the Air Board never reinstated Porter and never was obligated to do so, either actually or constructively, and, as a result, Porter is not entitled to back pay. For his part, Porter supports the analysis of the Court of Federal Claims and does not argue on appeal that the decisions of the 1993 SSBs are infected with error.

This appeal raises questions of statutory interpretation of the law that provides for the creation and empowerment of civilian boards for the correction of military records, 10 U.S.C. § 1552 (1994), and the law that provides for the creation and operation of SSBs, 10 U.S.C. § 628 (1994). Those questions must be decided in the context of a body of law, developed by the Court of Claims before the enactment of section 628, that established rules for determination of whether an offi-

cer's involuntary discharge after two pass-overs was proper.

### III

Section 1552 of title 10 gives the military secretaries power to correct military records using civilian boards. It reads, in relevant part:

(a)(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2) [dealing with enlistment and promotion of enlisted soldiers] such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department. The Secretary of Transportation may in the same manner correct any military record of the Coast Guard.

10 U.S.C. § 1552 (1994). Each military department has issued regulations that govern the operation and procedures of its board for the correction of military records. In the instance of the Air Force, the pertinent regulation is 36–2603, *Air Force Board for Correction of Military Records,* (Mar. 1, 1996) (codified as 32 C.F.R. § 865 (1997)). The Air Force also publishes Air Force Pamphlet 36–2607, entitled "Applicant's Guide to the AFBCMR," to provide information on the corrections process to applicants. 32 C.F.R. § 865.3(b).

Section 1552 does not limit the kind of military record subject to correction. Consequently, a corrections board may entertain any kind of application for correction, ranging from changing the terms of a discharge, *see Faircloth v. United States,* 186 Ct.Cl. 133, 1968 WL 9160 (1968), to correction of error in citation of awards received, *see Swann v. Garrett,* 811 F.Supp. 1336 (N.D.Ind.1992), to amending the records of Porter in this case, which include OERs, passover (or nonselect) decisions by promotion boards and SSBs, and discharge orders. Sheer volume of applications–approximately 5000 applications per

year in the instance of the Air Board–suggests the wide range of subject matter embraced in the applications.

In the Air Force, the Air Board acts for the Secretary and its decision is final when it denies applications, except in the case of applications to correct records based on allegations of whistleblowing conduct protected by 10 U.S.C. § 1034 (1994). In whistleblower cases and all other cases involving favorable recommendations on applications, including recommendations that an officer be promoted, the Secretary of the Air Force acts as the final decisional authority. *See* 32 C.F.R. § 865.4(p). Therefore, in this case, the decisions by the Air Board denying Porter's application to void his various passovers stood as final decisions, whereas the Air Board's decision to grant his application to correct certain OERs was a recommendation upon which the Secretary, through his delegate, was required to and did act.

When the issue at hand is whether an officer has properly been discharged pursuant to the "up or out" rule, the record before the selection boards that passed over the officer, and the legality of action of those boards, both in their composition and procedural operation, become the focus of attention.

■ The fundamental ground rule is that the selection procedure must follow the law. The documents which are sent to a Selection Board for its consideration therefore must be substantially complete, and must fairly portray the officer's record. If a Service Secretary place[s] before the Board an alleged officer's record filled with prejudicial information and omits documents equally pertinent which might have mitigated the adverse impact of the prejudicial information, then the record is not complete, and it is before the Selection Board in a way other than as the statute prescribes.

*Weiss v. United States,* 187 Ct.Cl. 1, 408 F.2d 416, 419 (Ct.Cl.1969). Consequently, the law requires that another selection board be pre-

sented with a substantially complete and fair record. *See Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 814 (Ct.Cl.1979). When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *See Skinner v. United States*, 219 Ct.Cl. 322, 594 F.2d 824 (Ct.Cl.1979).

Thus, another way to state the issue before us is whether the decision of the Secretary, upon recommendation of the Air Board, to void Porter's January 1984 OER without voiding Porter's passovers can withstand the standard of review.

## IV

■ The second statutory provision central to this case, section 628 of title 10, is entitled "Special Selection Boards" and permits the Secretaries to convene SSBs. The statute was enacted as part of the Defense Officer Personnel Management Act in 1980 ("DOPMA"). It reads, in full:

(a)(1) In the case of an officer who is eligible for promotion who the Secretary of the military department concerned determines was not considered for selection for promotion by a selection board because of administrative error, the Secretary concerned, under regulations prescribed by the Secretary of Defense, shall convene a special selection board under this subsection (composed in accordance with section 612 of this title or, in the case of a warrant officer, composed in accordance with section 573 of this title and regulations prescribed by the Secretary of the military department concerned) to determine whether such officer should be recommended for promotion.

(2) A special selection board convened under paragraph (1) shall consider the record of the officer as his record would have appeared to the board that should have considered him. That record shall be compared with a sampling of the records of

those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that should have considered him.

(3) If a special selection board convened under paragraph (1) does not recommend for promotion an officer in a grade below the grade of colonel or, in the case of an officer of the Navy, captain whose name was referred to it for consideration, the officer shall be considered to have failed of selection for promotion.

(b)(1) In the case of an officer who is eligible for promotion who was considered for selection for promotion by a selection board but was not selected, the Secretary of the military department concerned, under regulations prescribed by the Secretary of Defense, may convene a special selection board under this subsection ... to determine whether such officer should be recommended for promotion if the Secretary concerned determines that—

the action of the board which considered the officer was contrary to law or involved material error of fact or material administrative error; or

the board did not have before it for its consideration material information.

(2) A special selection board convened under paragraph (1) shall consider the record of the officer as his record, if corrected, would have appeared to the board that considered him. That record shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him.

(3) If a special selection board convened under paragraph (1) does not recommend for promotion an officer whose name was referred to it for consideration, the officer incurs no additional failure of selection for promotion.

(c)(1) Each special selection board convened under this section shall submit to

the Secretary of the military department concerned a written report, signed by each member of the board, containing the name of each officer it recommends for promotion and certifying that the board has carefully considered the record of each officer whose name was referred to it.

The provisions of sections 617(b) and 618 of this title apply to the report and proceedings of a special selection board convened under this section in the same manner as they apply to the report and proceedings of a selection board convened under section 611(a) of this title.

(d)(1) If the report of a special selection board convened under this section, as approved by the President, recommends for promotion to the next higher grade an officer whose name was referred to it for consideration, such officer shall, as soon as practicable, be appointed to the next higher grade in accordance with subsections (b), (c), and (d) of section 624 of this title.

(2) An officer who is promoted to the next higher grade as the result of the recommendation of a special selection board convened under this section shall, upon such promotion, have the same date of rank, the same effective date for the pay and allowances of that grade, and the same position on the active-duty list as he would have had if he had been recommended for promotion to that grade by the board which should have considered, or which did consider, him.

(e) The provisions of section 613 of this title apply to members of special selection boards convened under this section.

10 U.S.C. § 628 (1994). We quote the entirety of section 628 to demonstrate the significance of SSBs to the full panorama of cases that entail material flaws in the military promotion process.

### A

Before DOPMA, the military departments lacked access to any statutory special selection boards to make promotion or passover decisions when original selection boards had passed over an officer in circumstances in which the officer's record before the original boards contained faulty OERs. At that time, Standby Advisory Boards "(STABs") existed by virtue of military department regulation. From time to time, a civilian correction board, or the department itself, would send an officer's record to a STAB for consideration after initial passovers. Sometimes, the STAB was convened to replicate, or act in lieu of, the original selection board. *See Evensen v. United States*, 228 Ct.Cl. 207, 654 F.2d 68 (Ct.Cl.1981). Other times, the STAB was convened to render an advisory opinion to the civilian correction board on the officer's likelihood of promotion based on his corrected record. *See Braddock v. United States*, 9 Cl.Ct. 463 (1986). STABs, however, could only make recommendations on promotion matters. They, unlike SSBs, did not make the final military decision whether not to promote an officer.

DOPMA was the first major revision of military officer personnel law since the Officer Personnel Act of 1974. *See* D. Bent, "DOPMA: An Initial Review," *Army Lawyer*, April 1981, p. 3. The most significant feature of this 121–page act, Pub.L. No. 96–513, 94 Stat. 2835, was its rejection of the dual promotion system under which the regular and reserve components of each military service had separate statutory promotion systems, and the elimination of separate provisions for permanent and temporary promotions. Other important provisions changed the timing pursuant to which officers would be considered for promotion and altered conditions that require discharge of officers who are not selected for promotion. Shortly after enactment, the legislation was described in the publication *Army Lawyer* as "a highly complex, multi-faceted piece of legislation [that] will impact upon the officer corps in a wide variety of ways...." Bent, *supra*, at 16.

The legislative history of DOPMA is extensive and detailed concerning the major features of the Act. With regard to section 628, however, there is but a single brief reference

in the legislative history. Furthermore, since its enactment in 1980, section 628 has not been interpreted or applied to a twice passed-over officer by this court or its predecessor. In addition, although the conduct of the Air Board is restricted by regulation, the pertinent Air Board regulations do not regulate, control or dictate the circumstances under which an Air Board can recommend referral of an officer's record to an SSB. *See* 32 C.F.R. §§ 865 *et. seq.* This, then, is an instance of genuinely independent judicial review of this important part of the military personnel management system.

When we put the facts of this case into the construct of section 628(b),[1] we note the odd posture of this case. By the time of his consideration (and subsequent passover) by the 1993 SSBs, Porter's record had been corrected to remove the offensive OER and other prejudicial information. Indeed, Porter no longer argues that he is entitled to be promoted because of procedural error by the SSBs. Porter thus concedes that he is now lawfully discharged. Nonetheless, Porter asserts that the failure of the Air Board at some past time to void his two passovers amounts to an error of law entitling him to constructive reinstatement as of 1985, back pay and related benefits.

## B

Shortly after promulgation of section 628, the Air Force issued a regulation relating to SSBs. *See* AFR 36–89 (Sept. 15, 1981). The regulation contemplated that SSBs would be convened for officers on active duty (presumably those officers passed over just once by a selection board and desiring to challenge the proceedings of that selection board), and also for "separated officers (who have not been restored to active duty) who have petitioned the Air Board or a court to be restored to

active duty." Sec. 5–3, AFR 36–89 (Sept. 15, 1981). In "Consequence of Nonselection," Sec. 5–7, the regulation stated that an officer meeting an SSB, but not recommended for promotion by the SSB, would "incur no additional failure of selection for promotion unless the results of the original board(s) were set aside (voided) by proper authority when the case was referred to the special selection board." *See also,* AFR 36–89 (April 17, 1992) and AFI 36–2501 (Mar. 1, 1996). In those cases, the passover by the SSB amounted to an additional failure of selection, in that it replaced the previous nonselection decision that had been voided before the officer's record was sent to the SSB.

These two provisions together reveal the Air Force's contemporaneous understanding of those officers for whom SSBs could be convened. They also evidence the understanding of the Air Force that in some but not all instances passover decisions by regular selection boards may be voided before an officer meets an SSB. The same interpretation continued after 1981, when the Air Force amended the SSB regulation to provide, inter alia, a different test that the officer must meet to succeed before an SSB. The amended test requires that in order to be selected for promotion by an SSB, the SSB must find that the applicant's record scores higher than all the nonselect records and ties at least one of the selected records from the original selection board. *See* Sec. 35d., AFR 36–89 (April 17, 1992) and Air Force Information (AFI) 36–2501 (March 1, 1996).

The decision to convene an SSB in any particular case was made if the Secretary of the Air Force, or one properly acting on behalf of the Secretary, such as the Air Board, determined that

(1) The action of the board that considered the officer was contrary to law or involved

---

1. Not all of section 628 is before us in this case. Because of the facts presented here, we may overlook section 628(a)(1), (2), and (3), dealing with cases in which an officer did not meet a regular selection board at all because of administrative error. This case also does not require us to interpret and apply section 628(c)(1)-(2) and

(d)(1)-(2), except to note that the latter provisions make the decision of an SSB to promote an officer binding on the military department in question. Thus, it is the language of section 628(b) and its interaction with the other statutory provisions at issue in this case that we review here.

material error of fact or material administrative error, or

(2) The board did not have before it for its consideration, material information that should have been available had pertinent Air Force regulations and policies been complied with.

*See* Sec. 5–4b., AFR 36–89 (Sept. 15, 1981); Sec. 33a.(2), AFR 36–89 (April 17, 1992); Secs. 6.3.2.1 & 6.3.2.2, AFI 36.2501 (Mar. 1, 1996). The Air Force regulations for SSBs have thus consistently stated that access to an SSB occurs when the Secretary, or his or her designee, determines that a "material error of fact" was "involved" in the previous passover decisions. Neither the statute nor the regulations define the term "material error of fact."

Aside from the language of the regulations noted above, we have not found, nor have the parties suggested to us, any other support for or against the proposition that a decision of the Air Board to convene an SSB must, as a matter of law, be coupled with a recommendation that previous passovers be voided. As noted, the contemporaneous regulations suggest that such coupling may occur in some cases, but not in others. To the extent that the regulations can be said to aid in our inquiry, they seem to indicate that the Air Force and the Air Board are vested with a measure of flexibility in deciding whether to void passovers in a given case before convening an SSB.

### C

■ The one small reference to section 628(b) in the legislative history is instructive in the context of the facts here: "The purpose of this subsection is to provide a means to make a reasonable determination as to whether the officer would have been selected if his pertinent records had been properly considered by the prior board, unfettered by material error." H.R.Rep. No. 96–1462, at 74 (1980), U.S. Code Cong. & Admin. News at 6333. The retroactive nature of an SSB's inquiry, as suggested by this legislative history, is confirmed by the text of section 628(b)(2), which specifies that an SSB considers "the record of the officer as his record, if corrected, would have appeared to the board that considered him [and passed him over]." Further, the same statutory provision requires the SSB to compare the officer's record with a sampling of records of officers selected and not selected for promotion by the previous selection board. 10 U.S.C. § 628(b)(2). Even more evidence of the *nunc pro tunc* nature of the SSB deliberation is found in the provision that protects an officer passed over by an SSB from any additional failure of selection for promotion (unless, of course, as the regulations specify, the officer's initial passover is voided before his record is considered by an SSB). 10 U.S.C. § 628(b)(3). Finally, subsection (d)(2) provides that the consequences of a selection decision by an SSB relate back to the date of the selection board decision that passed the officer over. This subsection states that the officer who prevails before an SSB shall have the same position on the active duty list with the requisite pay and benefits that accrue to the rank to which the officer is promoted as a result of the SSB decision. 10 U.S.C. § 628(d)(2). As a whole, we think it is clear that Congress intended: (1) an SSB's decision to relate back to the date of the original selection board's decision; and (2) for the SSB's decision to stand in place of the earlier selection board decision.

### V

We turn now chronologically to the pre-DOPMA case law in the Court of Claims on which the Court of Federal Claims and Porter rely for the conclusion that a decision by the Air Board to recommend an SSB necessarily requires voidance of previous passovers, with the attendant consequences of such a correction of an officer's record. We note and emphasize at the outset that none of the cases discussed below contemplated or pertained to the statutory and regulatory framework established after the enactment of section 628 in DOPMA.

In *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (Ct.Cl.1979), the Court of

Claims, sitting en banc, considered the case of an officer who had been discharged after the requisite passovers by promotion boards. On petition, the Air Board recommended, and the Secretary approved, correction of the officer's records to remove four OER's. The Air Board, however, did not act on the officer's request to void the initial passover decisions made by selection boards that had seen the erroneous OERs. The officer was subsequently twice passed over again, on the basis of a record omitting the erroneous OERs but failing to account for the gap in the record caused by their omission. The officer brought suit in the Court of Claims, asserting that the Air Board had acted arbitrarily and capriciously in failing to void the initial passovers. The officer sought reinstatement and back pay.

The Court of Claims noted that the burden of proof falls on the plaintiff to demonstrate an "abuse of administrative discretion [that] rises to the level of legal error which merits judicial relief." *Id.* at 813. According to the court, such cases of abuse are comparatively rare, "because the proof must overcome the strong, but rebuttable, presumption that the administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Id.* (*citing Doggett v. United States,* 207 Ct.Cl. 478, 483 (1975); *Skaradowski v. United States,* 200 Ct.Cl. 488, 471 F.2d 627 (Ct.Cl.1973); *Hertzog v. United States,* 167 Ct.Cl. 377 (1964); *Prince v. United States,* 127 Ct.Cl. 612, 119 F.Supp. 421 (Ct.Cl.1954)).

Because Sanders had been passed over subsequently on a record that omitted the erroneous OERs, and discharged, the government argued that Sanders could not prevail unless he could show that he would or probably would have been selected "but for" the errors in his record. In other words, under the government's view of the allocation of burdens of proof, Sanders would have to "show that the defects in his file alone led to the non-promotion decisions and to his discharge." *Id.* at 814.

The Court of Claims grasped the consequences of such a "but for" test for the officer: "the test requires proof of inherently subjective considerations not really susceptible of proof. It would be all but impossible for a serviceman to prove he would have been promoted but for the defendant's error." *Id.* at 816. Furthermore, the "but for" test would have focused the court's analysis and decision on the merits of Sander's promotion prospects, instead of on the alleged demerits of his discharge. In particular, the court observed that:

> carried to its logical conclusion, the defendant's but for test would, assuming a plaintiff could produce any viable proof under it at all, place on the court the burden of deciding the issue of promotability. We are not a super selection board. We have repeatedly made it clear that deciding who gets a promotion is not our responsibility, absent proof of a legal right to it which has been violated.

*Id.* at 816. The court's firm reluctance to let itself be pushed into the arena of military personnel promotion decisions was rooted in the long-standing command from the Supreme Court that:

> judges are not given the task of running the Army.... The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters....

*Orloff v. Willoughby,* 345 U.S. 83, 93, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Indeed, the Court of Claims itself had stated the impropriety of courts intruding into military promotion decisions:

> The reluctance of the judiciary to review promotion actions of selection boards is rooted not only in the court's incurable lack of knowledge of the total grist which the boards sift, but also in a preference not to meddle with the internal workings of the military.... The promotion of an officer in the military service is a highly specialized function involving military require-

ments of the service and the qualifications of the officer in comparison with his contemporaries, plus expertise and judgment possessed only by the military. No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure, which includes, but is not limited to, an analysis of the fitness reports and personnel files and qualifications of all the officers considered. . . .

*Brenner v. United States,* 202 Ct.Cl. 678, 692, 693–94 (1973), *cert. denied,* 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974).

In light of this law—and its own fear of treading on impermissible legal ground—the court in *Sanders* placed the ultimate burden of proof on the government to show that the officer would not have been promoted had his record contained no error. *Sanders,* 594 F.2d at 816.

Analyzing the proceedings before the Air Board in Sander's case, the court surmised that the Air Board had in fact applied a but for test to Sander's case, and by doing so had "usurped the functions of the selection board, making itself a sort of super selection board, instead of correcting the error and injustice as its charter contemplates. . . ." *Id.* at 817. Thus, it was legal error for the Air Board to use the wrong test to measure Sander's application for relief. Nonetheless, the court sympathized with what it took to be the desire of the Air Board to "formulate a standard for harmless error to avoid windfall recoveries." *Id.* at 818.

Although the Air Board had not applied a harmless error standard to the facts in Sander's case, the court deemed the errors in Sander's record so severe as to require the voiding of the passover decisions based on erroneous records. Harmless error, according to the court, lies when "substantial evidence shows that it was unlikely that the officer would have been promoted in any event." *Id.* Because the burden to produce such substantial evidence is on the government, and because "that evidence is missing here," Sanders was entitled to prevail.

Two months after deciding *Sanders,* the Court of Claims again confronted a case en banc concerning officers discharged after two passovers: *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984 (Ct.Cl.1979). In this instance, the officers in question had served in the U.S. Army Reserve. By statute, the boards that considered the officers for promotion were to include an appropriate number of Reserve officers. The selection boards that produced the passovers requiring discharge of the plaintiff officers, however, contained no Reserve officers. The Army Board for Correction of Military Records responded to the fundamental defect in the composition of the selection boards by recommending to the Secretary that the passed over officers be reconsidered by properly constituted selection boards. The initial passover decisions were not voided, and the officers that had been discharged because of two passovers were not reinstated with back pay. Properly constituted boards later passed over the officers again. *Doyle,* 599 F.2d at 992.

The government sought to excuse the unlawful composition of the original selection boards on the ground that such error was proven harmless by the later passovers by properly constituted boards. The officers argued that the error in the original boards had been so fundamental that their initial passovers should be voided, with the consequence of reinstatement and back pay until the properly constituted boards later passed them over, causing their lawful discharge. The court responded by holding the harmless error test inapplicable to a fundamental "procedural violation [that] penetrates to the heart of the process Congress deemed necessary for fair judgment in selecting officers for promotion. . . ." *Id.* at 996. Clearly underpinning this holding is the logical proposition that an illegally composed selection board cannot produce lawful decisions. Consequently, the court held that the corrections board had acted arbitrarily and capriciously in failing to void the initial passovers of the plaintiff officers. *Id.*

In *Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704 (Ct.Cl.1980), the officer was

passed over for promotion in the Air Force and separated from active duty. He sought relief from the Air Board, alleging that certain OERs in his record were erroneous, requiring their removal from his record and resubmission of his case to other selection boards. The Air Board refused to remove the contested OERs and denied Hary's petition for correction. Hary brought suit in the Court of Claims. Because the Air Board had applied the "but for" test rejected in *Sanders*, the court restated the test to be applied. In order to prevail, the claimant must show that the alleged defect in the proceedings

> substantially affected the decision to separate him or relieve him from active duty, or at least he must set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action.

*Hary*, 618 F.2d at 707. Rather than remand the case to the Air Board for application of the proper test, the Court of Claims applied the test itself. In so doing, the court held that two of the contested OERs satisfied the burden placed on the claimant. *Id.* at 708. Next, the court assessed whether the error caused by the one faulty OER was "harmless" to the passover decisions. To do so required the court to "canvas for ourselves the evidence in the administrative record in the light of the arguments and analyses offered by the parties." *Id.* at 709. Although the court disclaimed operating as a "super selection board in passing on this problem of the connection between the defective OERs and the likelihood of plaintiff's selection for promotion," *id.* at 710, it then assessed and compared comparative rating scores and records of Hary and other officers. *Id.* at 710-11. The court ultimately concluded that "it is quite likely that the plaintiff would have failed to be promoted to permanent major in 1971 and 1972 even if the [defective] OERs had not been in his record." *Id.* at 711. In short, after assessing the government's rebuttal to the officer's prima facie case, the error of the two OERs was held to be harmless. *Id.* ("Any error in the selection process was therefore harmless").

We need only pause briefly over *Evensen v. United States*, 228 Ct.Cl. 207, 654 F.2d 68 (Ct.Cl.1981), since it is a reprise of *Doyle*. In *Evensen*, the officer was initially passed over by regular selection boards. On petition from Major Evensen, the Army corrections board agreed that his passovers were infected with erroneous OERs. The board recommended that the officer be presented, on a corrected record, to a STAB for promotion consideration. The STAB, however, was populated with the same officers that had composed the initial selection boards, quite in violation of applicable regulations. The Court of Claims held, citing *Doyle*, that the harmless error rule of *Sanders* is inapplicable to the error of composition of the STAB, and that, as in *Doyle*, the correct remedy is automatic voiding of the initial passovers. *Evensen*, 654 F.2d at 72.

Our recitation of the pertinent Court of Claims cases ends with *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (Ct.Cl. 1982). Like *Hary*, *Engels* did not involve fundamental process error in the composition of the board, but instead necessitated application of the harmless error rule. The court restated the rule to clarify that the burden on the officer is to make a prima facie showing of nexus between the alleged error in his record and the passover decision. *Engels*, 678 F.2d at 175. The final burden of persuasion "falls to the Government to show harmlessness—that, despite the plaintiff's prima facie case, there was no substantial nexus or connection." *Id.* Even though the corrections board had erroneously applied the discarded "but for" test, the court proceeded to the merits of the dispute as in *Hary*, deciding that the plaintiff had met his burden. *Id.* at 176. Turning to the government's case, the court asked the quintessential military promotion question: whether it "is unlikely that he [Engels] would have been promoted in any event." *Id.* After an extensive examination of the details concerning the relative merits of Evensen's promotion prospects, the court concluded that the government had failed to carry its end burden, and that Evensen thus could not be deemed properly

passed over by his selection boards. *Id.* at 178. Thus, as in *Hary,* the court decided the merits of the promotion issue, and concluded that the officer must be reinstated with back pay until such a time as he was correctly discharged. *Id.* at 180.

From this body of law, we can reach certain judgments, at least insofar as they pertain to cases arising on similar facts before SSBs were available to assist in the officer selection process. Instances of fundamental error, at least those affecting the composition of the deciding body, are not susceptible to review under the harmless error test. *See Doyle,* 220 Ct.Cl. 285, 599 F.2d 984 (1979); *Evensen,* 228 Ct.Cl. 207, 654 F.2d 68 (1981). Presumably because the civilian corrections board can correctly and assuredly measure the depth of the wrong in such cases, that is, when there can be no doubt that the error undermines the outcome, the remedy of voided passovers, reinstatement and back pay follows as of course. *See, e.g., Doyle,* 599 F.2d at 1004.

In cases that pit the officer against his military superiors in the debate over whether the officer is relatively more qualified than other officers competing for promotion, our predecessor court had little choice but to formulate and employ either the "but for" test or the "harmless error" test, in order to analyze the facts at hand. As the opinions in the foregoing cases make quite clear, it makes no sense to order relief for a corrections application that alleges an error lacking any impact on the passover decision. *See, e.g., Sanders,* 594 F.2d at 813. But because error that is not "harmless" begs for correction, the decision and rule in *Sanders* was necessary to decide the fundamental promotion/non-promotion issue. *Id.* at 816. The Court of Claims candidly recognized that the "but for" test urged by the government would turn the court (as well as the corrections board) into a super selection board, and thus necessarily enmesh the court in the basic promotion issue when such a decision of a corrections board was challenged. *Id.*

That the harmless error test would paradoxically force the civilian corrections boards and the court into the same obligation to make essentially military promotion decisions became quite evident from the court's decisions in *Hary* and *Engels,* which reflect judicial resolution of the fundamental promotion issue. *Hary,* 223 Ct.Cl. 10, 618 F.2d 704 (1980); *Engels,* 230 Ct.Cl. 465, 678 F.2d 173 (1982). With no statutory tool available to resolve the basic promotion issue, the Court of Claims' resolution of the issue left the civilian corrections boards and the courts in the middle of decisions that are fundamentally military in nature.

The case law does reveal one instance in which a corrections board could satisfy its duty to correct records under section 1552, in a passover situation, without using the harmless error test in such a manner as to make itself into a super selection board. The case is *Braddock v. United States,* 9 Cl.Ct. 463 (1986). After two nonselections for promotion, Braddock was discharged from the Army. He petitioned for correction of his records, asserting the presence of faulty OERs in his record before the selection boards that passed him over. The corrections board agreed, recommending removal of the faulty OERs and that Braddock's record be presented to a STAB "for an advisory opinion as to whether plaintiff's consideration by the original selection boards was prejudiced by the errors [in his record]...." *Id.* at 466. In the Army, the STAB was a creature of regulation and standard operating procedures, and existed to advise the Secretary on promotion matters and to "test and determine whether the error in the officer's records was prejudicial or harmless." *Id.* at 467. The STAB concluded that Braddock would not have been promoted in any event. Later, the corrections board confirmed its decision not to void the passovers and Braddock's discharge.

Because the corrections board declined to void Braddock's two passovers and his discharge before recommending that he meet a STAB, he brought suit alleging that such action was required, under the Court of Claims case law discussed above, when faulty OERs were removed from his record and his

case was sent to the STAB. The Claims Court disagreed. By sending Braddock's record to the STAB—panel of military officer—for a recommendation on Braddock's promotion prospects, the corrections board had simply deferred its decision on whether to void the initial passovers until it had advice from the military on the essentially military question of promotion. The Claims Court found "nothing wrong with this procedure." *Id.* at 473. The Claims Court thus viewed the process in *Braddock* as an application of the harmless error test by the corrections board that did not require the corrections board or the court to become involved in the comparative officer qualification issue. In the end, the harmlessness of the error caused by the faulty OERs was shown by the corrections board's acceptance of the STAB's decision that Braddock would not have been promoted even on a correct record. *See id.* at 469. Taking comfort with the process in the case, the Claims Court noted that "Congress basically ratified the STAB process when it enacted 10 U.S.C. § 628 in 1980." *Id.* at 474.

## VI

We must now measure the decision of the Court of Federal Claims in light of sections 1552 and 628 and the pre-DOPMA case law. The issues framed from the decision of the Court of Federal Claims and by the briefs raise an issue of interpretation of section 628, addressed in part A below, and other issues that draw their breath from the interaction of sections 1552 and 628 and the pre-DOPMA case law. Those issues are considered in parts B, C, and D.

## A

■ Purely as a matter of statutory construction, the Court of Federal Claims concluded that an SSB, at the request of a corrections board, may only consider the record of an officer twice passed over and discharged if the officer is at least constructively reinstated. According to the court, in order to effect such a constructive reinstate-

ment the corrections board is required to actually or implicitly void the two passovers that forced the discharge. The court came to its conclusion because the statute affords access to an SSB to "an officer who is eligible for promotion who was considered for promotion by a selection board but was not selected...." 10 U.S.C. § 628(b)(1) (1994). To be "eligible" for promotion, the court concluded that the officer must be on the active duty list, which in Porter's case would have required actual or constructive reinstatement. Porter essentially repeats this view in urging affirmance of the Court of Federal Claims.

The government responds that Porter overlooks the pertinent legislative history and fails to appreciate that section 628 acts to turn the clock back to the date of the original selection board passover decisions in order to assess the officer as of the time of the initial selection board decisions, when the officer was on the active duty list. As noted earlier, the legislative history, although sparse, is clear in stating its purpose: to make a "reasonable determination" whether the officer would have been promoted if his records originally had been seen untainted by material error. *See* H.R.Rep. No. 96–1462, at 73 (1980). Thus, we can be certain that Congress intended for discharged officers to have access to SSBs. The statutory language, however, speaks only of officers "eligible" for promotion. On the face of that language, an officer challenging his first passover before discharge after a second passover would still be "eligible" for promotion as an active duty officer, whereas the officer passed over twice and discharged would lack access to an SSB for want of eligibility for promotion.

We think it unlikely that Congress intended with the use of the word "eligible" to draw a line between officers once passed over and those twice denied promotion, allowing the latter access to an SSB only if they are by a fiction constructively reinstated to the active duty list. We reach this conclusion because of the certain retroactive character of the SSB deliberative process. Consequently, we

interpret the word "eligible" in section 628(b) to mean eligible as of the time of the consideration of the officer's record by the selection boards whose decisions are later challenged. Porter thus, as a matter of statutory interpretation, was "eligible" for consideration by the SSB without the need to reinstate him, actually, constructively, or by "deemed" action of a reluctant corrections board, the latter being the avenue to the SSBs paved for Porter by the Court of Federal Claims.

We thus conclude and hold as a matter of statutory interpretation that nothing in section 628 requires the constructive reinstatement—via the purge of at least one of the two passovers from the officers' record—of a twice passed over and discharged officer in order to present the officer's record to an SSB.

**B**

■ The government presents the following argument. The Air Board is authorized by section 1552 and the regulations promulgated thereunder to receive and pass upon applications from current and past Air Force military personnel for the correction of their military records. This authority extends to all military records, and the authority of the Air Board to recommend corrections to the Secretary is unfettered. According to the government, the Air Board is empowered to use its authority with sound discretion. As an example of such sound discretion, the government asserts that the Air Board may, in appropriate cases, recommend that a twice passed over and discharged officer's record be corrected to remove the passovers and void his discharge. The government posits that such action would be taken by the Air Board when it is certain that a discovered error before an officer's previous selection boards necessarily led to the officer's nonselection. The government does not catalog the entirety of such situations, noting only that such would appear to be the case if an applicant's military record contained another officer's unfavorable disciplinary action report. Without deciding, we might speculate

that other kinds of error would qualify for an Air Board conclusion that the demonstrated error vitiates the initial passovers. Matters such as impermissible consideration of race, sex or religion, or instances of an illegally composed selection board (one thus incapable of producing a legal result) come to mind. For such matters, the civilians on the Air Board possess the competence and confidence to make a correct decision and recommendation without judging the competing qualities of specific military experience records.

With regard to cases presenting only the issue of relative promotability of officers, when a corrections board has already corrected the officer's military experience record, however, the government draws a line. For such situations, the government asserts that nothing in either section 628 or section 1552 *prohibits* the Air Board from refusing to void previous passovers when recommending that the officer meet an SSB for an assessment of his relative promotion prospects, based on his cleansed record and records of officers who met the original boards along with the protesting officer. In this respect, we agree with the government's reading of the pertinent statutes.

The government also complains that the insistence of the Court of Federal Claims that the Air Board perform a harmless error analysis itself, and the court's sua sponte performance of that task in the face of the unwillingness of the Air Board, carries the civilian Air Board and the courts into the impermissible zone of military decisions that are reserved to the military, absent legal error in the promotion decisions.

From the government's perspective, the solution to unwanted intrusion of the courts into the military business of promotion is to recognize that the harmless error test from the pre-DOPMA cases is unnecessary for fair consideration and decision of applications to the Air Board in challenging the legality of previous passover decisions. In cases in which the error is found to be egregious, when the Air Board is sure of the need to

void previous passovers, we may assume the Air Board will exercise its full authority. For such cases, the harmless error test is unnecessary and inapt, as the Court of Claims reasoned long ago in *Doyle* and *Evensen*. See *Doyle*, 220 Ct.Cl. 285, 599 F.2d 984 (Ct.Cl.1979), *Evensen*, 228 Ct.Cl. 207, 654 F.2d 68 (Ct.Cl.1981). But in cases in which the Air Board lacks the confidence to make a fundamentally military promotion decision, such as this one, the Air Board is not obligated to resolve an officer's promotion prospects by performing a harmless error analysis. Instead, the Air Board may recommend that the fundamental promotion determination be made by the SSB. If the SSB decides in favor of the officer, that decision binds the Secretary, and the Air Board will make the necessary corrections to the record, as specified in section 628. If the SSB determines that nonselection is appropriate, then, as occurred in this case, the Air Board stands ready to receive and decide any complaints an officer may assert concerning the process and decision of an SSB.

The government advances its view of the Air Board's authority as preserving all of the Air Board's section 1552 powers, while at the same time extricating the courts and the civilian corrections boards from the unwelcome situation in which passover adjudication placed them before the enactment of section 628. Nothing in the government's argument, or in our decision in this case, limits in any way the authority and duty of the Air Board to correct the substantive contents of an officer's record as it exists before a promotion board, including SSBs.

Against the government's arguments, Porter raises several protests. First, Porter faults the government for shifting legal theories in the course of the long court proceedings in this case. According to Porter, the government agreed that this is a harmless error case early on, and the government cannot prevail because, according to Porter, it has never rebutted Porter's prima facie case that the errors in his record are not harmless. Porter's frustration in keeping up with an evolving set of legal issues over a long time does not, however, rise to the level of error on the government's behalf. Porter also defends the view of the Court of Federal Claims that only officers on the active duty list are eligible for consideration by an SSB. For the reasons stated in part A of this section, we reject that reading of the statute.

■ Porter also argues that the statutory test for referral to an SSB, which is "material error of fact," in this case means an error which is not harmless under the *Sanders-Hary-Engels* analysis. Porter's argument is flawed. First, Porter recognizes that an officer's record can be sent to an SSB by the military command itself, without a recommendation from the corrections board. Because no one argues that the harmless error test applies to the military command, Porter states that the military command can invoke an SSB on the showing of "mere material error," something less in degree of impact on initial passover decisions than "non-harmless" error. Thus, Porter would have a two-level meaning for the statutory words: "mere material error" in one instance, and full blown "non-harmless error" when access to an SSB is recommended by a corrections board. To state Porter's argument discloses its weakness: such a two-tiered meaning for a statutory word is unacceptable because it would create two statutory avenues to an SSB when the law specifies only one. *Cf.* 10 U.S.C. § 628.

At the heart of Porter's case is his firm conviction that the harmless error test introduced by the pre-DOPMA case law—under which he presumably would be entitled to voidance of his two passovers before he was sent to the SSBs—survives the enactment of section 628 and is still necessary to produce fair and equitable consideration of officers' records by selection boards. Porter also argues that the government's position would undercut the section 1552 powers of the Air Board. In particular, Porter asserts that the Air Board has the entire duty and responsibility under section 1552 to recommend correction of military records, and that therefore any reliance on an SSB to assist in the

records correction process is an unlawful abdication by the Air Board of its statutory duties.

Stated differently, Porter's argument is that, without implementation of the harmless error test as a mandatory feature of the Air Board's processes, the Air Board shirks its duties under section 1552 by losing control of the corrections process. This loss of control, he says, is seen in the failure to force the civilian corrections board to decide the military promotion issue, and in allowing the SSB to make the records correction decision. We disagree.

The Air Board must act on an officer's petition for correction. When the officer asks that previous passovers be voided, the Air Board must respond with a decision. In appropriate cases, we may assume that the Air Board will exercise its discretion to void passovers. If the Air Board recommends that an officer's record be sent to an SSB without first voiding earlier passovers, the Air Board retains control over the petition for correction and is authorized and obligated to review the actions of the SSB on application from the officer, as occurred in this case. Nothing prevents the Air Board from considering fundamental flaws of an SSB, such as the *Doyle-Evensen* type, or other material error that might be involved in an SSB decision. If the Air Board stays action on a request to void passovers pending action by an SSB, it must subsequently grant or deny the request to void the initial passover to close out the petition for correction. That the Air Board does not lose control of the corrections process pending action by an ·SSB is evident, because the Air Board must be able to act in the event material errors of a procedural, factual, or compositional nature infect the SSB deliberations.

Porter's view of how the Air Board must operate once it finds a material error of fact requiring correction in the record of a twice passed-over officer is also subject to practical criticism. As is clear from the case law exegesis above, performance of the harmless error test requires the corrections board to act as a kind of selection board. Assuming, post-section 628, that a corrections board employed the harmless error test and concluded in favor of the officer, it would, on Porter's view, then in essence recommend that the same kind of analysis be performed again by the military SSB. A certain duplication of effort would seem inescapable and to no beneficial end.

As we have stated above, in light of the lack of any statutory command to extend use of the harmless error test to section 628 cases, the government urges us to discard that test. We take care to note that the government does not ask us to overrule the *Sanders-Engels* line of cases. As a panel of this court, we of course are bound by the law of our predecessor court. *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982). If the government's argument prevails, however, we may understand those decisions as not applicable to the case before us, because of the change in law governing the review of twice passed-over officers.

## C

We think it is possible, though less desirable, to force this case into the harmless error analytic construct, as the government seems to have urged at the early stages of the litigation. As described in the following paragraphs, we consider and reject this possibility. Such forcing would posit that the corrections board must make a harmless error determination in every case, but that it only makes that decision after an SSB has made its decision on the promotability issue. If the SSB decides in favor of promotion, the analysis would conclude that the government had failed to prove that the material error that drove the case to the SSB was harmless. If the SSB decided against promotion, the harmlessness of the error would have been shown.

The harmless error rule of the old cases leads to many complexities, and in the end has enmeshed the civilian corrections boards and the courts in the essence of promotion *vel non* judgments. Retaining the harmless

error test for cases such as this, however, carries the prospect that the line dividing the military and the courts will become blurred if not pierced. Thus, we perceive some considerable risk in forcing the SSB process into the harmless error mold.

At the same time, we think there is little genuine gain to the military personnel selection process by retention of the harmless error construct. Under section 628, a passed-over officer—including an officer discharged after two passovers—has access to an SSB on a showing of "material error." See 10 U.S.C. § 638(b). As that term is understood by the government, it means an error that, in the opinion of military command or a corrections board, *might* have affected the outcome of selection board decisions. On such a showing, an officer's record would go before an SSB, which is authorized by law to make a promotion decision that will bind the military command and the Secretary of the military department. Civilian corrections boards retain their full powers to correct military records in order to insure that the promotion system is operated fairly and according to governing statutes and regulations. Even without the harmless error construct, corrections boards have ample authority and responsibility to guarantee that an officer's record will be substantially complete and fair when presented to selection boards, and that the processes of selection boards, including SSBs, will not be arbitrary, capricious or contrary to law.

We see nothing in section 1552 nor in section 628 that stands in the way of the government's argument. Proper allocation of civilian and military duties and responsibilities is advanced by the government's position. The pre-DOPMA law on which the Court of Federal Claims relied need not be applied to the circumstances of this case. The harmless error test, while necessary to adjudicate cases such as this before the enactment of section 628, is not only unnecessary now, but grafting it onto section 628 is sufficiently problematic for us to reject that possibility. In cases such as this, the harmless error rule has no application.

D

Because the powers of the Air Board are not circumscribed by section 628, we emphasize that the Air Board's duties and responsibilities are not reduced when it invokes assistance from an SSB in responding to a petition for correction of military records. In order for an SSB to perform lawfully, it must yield—as Congress expected— a "reasonable determination as to whether the officer would have been selected if his pertinent records had been properly considered by the prior board, unfettered by material error." See H.R.Rep. No. 96–1462, at 74 (1980). We note that the same kinds of questions that may be raised about the records presented to, and the procedural operations of, regular selection boards can be raised about the records before, and procedural operations of, an SSB. When such questions are presented to a corrections board on a petition to correct a military records created by an SSB, the corrections board is bound by statute to decide the questions presented.

Section 1552 of title 10 conveys broad authority to the corrections boards regarding how they may exercise their statutory responsibilities, and contains no prescriptions on how they may fulfill their statutory charge. Therefore, the Air Board is not required to decide whether an error of a regular selection board was not "harmless" under the pre-DOPMA case law when recommending that a passed-over officer meet an SSB, in order to receive—after the fact—a reasonable determination of his prospects for promotion on a corrected record. Rather, in the post-DOPMA context, the Air Board may exercise its section 1552 authority by following the statutory directive in section 628(b)(1)(A); that is, convening an SSB upon determining that "the action of the [original selection] board which considered the officer was contrary to law or involved material error of fact or material administrative error."

■ However, section 1552 imposes the ultimate responsibility on the corrections

board to assure that, if utilized, a section 628 SSB produces a reasonable determination of the officer's promotion prospects. If an officer meets an SSB unsuccessfully and can point to a material flaw in the SSB's procedures arguably undermining the SSB's non-selection judgment, he may petition the corrections board to alter or void the SSB's decision. After an SSB has made its decision, the focus of the corrections board's attention under section 1552 is on whether the process by which the SSB reached its decision afforded the officer a "reasonable determination" of his promotion prospects. Indeed, in this case, Porter challenged the lawfulness of the 1993 SSBs in essence on the ground that he was deprived of a "reasonable determination" because of alleged imperfections in the benchmarks and scoring used by the SSBs. The Air Board was in error when it suggested that the response to Porter's challenge would better be given by an SSB. As the Air Board's Second Addendum demonstrated, the Air Board was capable of deciding Porter's procedural challenge without having to decide whether Porter was or was not better qualified for promotion than the officers selected and not selected by the CY84B and CY85A captain promotion boards. Instead, as the Air Board noted, Porter's allegation of the SSB's use of impermissible supercompetitive standards failed for lack of factual support, because of other factual information in the record that undercut Porter's claim that an impermissible supercompetitive standard had been applied to him.

The foregoing responds to Porter's argument that the Air Board abdicates its statutory duties under section 1552 by recommending invocation of an SSB without coupling the SSB recommendation with voidance of previous passover decisions. Because the civilian corrections board is obligated to recommend voidance of SSB decisions only when it concludes that the process before an SSB has not yielded a reasonable determination that the officer would have been denied promotion initially even with an untainted record, the use of an SSB in this case was consistent with, and satisfied, the responsibility of the Air Board under section 1552.

The civilian boards for correction of military records are no less the guardians of the military promotion process after DOPMA than they were before DOPMA. The promotion interests of military personnel that were protected by corrections boards in the past remain protected when an SSB is used as part of the records correction process. Because of DOPMA, however, the methodology of corrections boards may dispense with the old and mooted harmless error inquiry, and instead focus on whether an SSB has achieved its statutory function of producing a reasonable determination of the officer's original promotion prospects. In a nutshell, the interaction between section 1552 and 628 shifts the focus of attention of a civilian corrections board from the relative promotion prospects of one officer over others to the fairness of the process by which an SSB has decided the promotion issue in a given instance.

Finally, we assure the parties that we have fully considered their other arguments in support of their positions and have determined that the other arguments do not affect, undercut, or stand in the way of our ultimate conclusions.

## Conclusion

In cases such as this, the Air Board is not required by statute or case law to void the initial passovers, with the attendant consequences, when recommending that the officer's record be submitted to an SSB. The Air Board's decision to deny Porter's request for voidance of his initial passovers in this case is therefore not arbitrary, capricious, unsupported by substantial evidence or contrary to law. Porter was lawfully discharged from the Air Force in 1985. The judgment of the

Court of Federal Claims is reversed.[2]

*REVERSED.*

---

**2.** Porter argues, in a conditional motion to remand to the Court of Federal Claims for further proceedings, that this court should not "defer" to the views stated in the Second Addendum without first remanding the case to examine the circumstances by which the Second Addendum was written. To the extent that we agree with any view stated in the Second Addendum, we do so as an independent matter of statutory interpretation. The conditional motion to remand is denied.