Stephen W. **RICHEY**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 97–478C.

United States Court of Federal Claims.

July 18, 2001.

Jack E. Carter, Fayetteville, North Carolina, attorney of record for plaintiff.

Sean C. Griffin, Washington, D.C., with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

This case involves a dispute over a military personnel decision by the U.S. Department of the Army ("the Army" or "defendant"). The plaintiff, Stephen W. Richey ("Capt. Richey" or "plaintiff"), received an involuntary honorable discharge on April 1, 1996, after twice being passed over for promotion to the rank of Major from the rank of Captain, in 1994 and 1995, respectively. Capt. Richey filed suit in the United States Court of Federal Claims on July 15, 1997, alleging that the discharge was improper due to two faulty Officer Evaluation Reports ("OERs")

from 1989 and 1991, respectively. He seeks reinstatement to his former position and back pay, deletion of adverse reports from his record, and costs and attorneys' fees.

The government moved for judgment on the administrative record on October 31, 1997. Capt. Richey opposed the government's motion and filed his own cross-motion for judgment on the administrative record on February 20, 1998. These instant cross-motions for judgment on the administrative record were initially addressed in an August 26, 1999 opinion by this court, which remanded specific issues of the case back to the Army Board for the Correction of Military Records ("the ABCMR"), the administrative body of defendant authorized to render promotion decisions. *Richey v. United States*, 44 Fed. Cl. 577 (1999). By said opinion, the court clearly requested specific and numbered findings of fact necessary for it to render a supportable decision. *Id.* Thereafter, the ABCMR failed to fully comply with the court's order, which necessitated three (3) additional remands, on November 21, 2000, February 21, 2001, and June 26, 2001, respectively, requesting certain specific findings which were either not made by the ABCMR or not submitted to the court.

This instant opinion addresses, with finality, the parties' cross-motions for judgment on the administrative record. Ultimately, we order that Capt. Richey be reinstated to his former position, and that he receive back pay and benefits-minus setoffs, from the period April 1, 1996, the date of his involuntary honorable discharge, through the date of this opinion.

## FACTS AND PROCEDURAL HISTORY

Stephen W. Richey, an 18–year veteran of the military, received an involuntary honorable discharge from the United States Department of the Army on April 1, 1996, pursuant to the Department's "up or out" policy,[1] after previously being twice passed over for promotion in 1994 and 1995 respectively. He contends that these two nonselections were the result of two defective OERs and, therefore, his discharge was improper. The first OER covered the period from December 3, 1988 through December 15, 1989 ("the 1989 OER"), and the second evaluation covered the period from January 29, 1991 through April 18, 1991 ("the 1991 OER"). Furthermore, Capt. Richey alleges that the ABCMR, in refusing his requests to delete the OERs before his two applications for promotion were decided in 1994 and 1995, acted in a manner that is arbitrary, capricious, and not in accordance with Army regulations, which caused his two previous nonselections for promotion and his subsequent April 1, 1996 involuntary discharge. The following two sections explicate the operative facts surrounding each OER, seriatim, followed by a third section which explains the current procedural posture of the case.

### 1. The 1989 OER

From November 1988 through December 1989, Capt. Richey was Squadron Maintenance Officer for an armored cavalry regiment stationed at Fort Bliss, Texas. During this tour of duty, he received a derogatory OER for the period from December 3, 1988 through September 15, 1989, from his rater, Major Stephen M. Speakes ("Major Speakes"), and his senior rater, Lt. Col. Edward J. O'Shaughnessy.[2] Major Speakes stated in his evaluation that Capt. Richey "was just not the man for the job and it showed. He would be better utilized in a

1. Apparently, the "up or out" policy is being reconsidered by the current administration. Defense Secretary Donald H. Rumsfeld was quoted by the *Los Angeles Times* as being highly critical of said policy. Paul Richter and Lianne Hart, *Military Rethinks Axing Also–Rans*, L.A. TIMES, June 13, 2001, at A12 ("While the military is spending generously to recruit and keep young talent, the system is jettisoning experienced and skilled men and women along with underperformers. He [Rumsfeld] says it is "mindless" to get rid of people who are "at the top of their game" and is exploring whether to permit more of them to stay longer in their current rank.").

2. In the Army, an officer receives periodic written evaluations that provide information to the Army for use in making personnel decisions. Army Reg. 623–105 ¶ 1–4. Evaluations are prepared by the officer's rater, usually his immediate superior, and his senior rater, usually an officer above the rater in the chain of command. *Id.* at ¶ 3–1, 3–4, and 3–11.

concepts and doctrinal line of work where his intellect could be better utilized." Admin. Rec. at 16. Following this adverse evaluation, Capt. Richey was removed from his position by Major Speakes as Squadron Maintenance Officer.

In October 1992, Capt. Richey petitioned the Officer Special Review Board ("the OSRB"), the initial administrative body that reviews OERs, for removal of the adverse 1989 OER from his record and stated four grounds in support thereof. First, Capt. Richey alleged that the relationship with Major Speakes was hostile from the outset and he related a number of incidents to illustrate this point. For example, Capt. Richey alleged that Major Speakes told him in a private conversation that, "junior captains are a dime a dozen, and if we need a scapegoat for the maintenance situation, it will probably be you." Admin. Rec. Supp. at 12. By further example, Capt. Richey relayed an incident during which Major Speakes gave him a written reprimand for actions ordered by Major Speakes himself. Second, the regiment was in a state of extreme disarray when Capt. Richey took over as Squadron Maintenance Officer due to prior neglect by his predecessors. Third, Capt. Richey was put in charge of officers who were incompetent. Fourth, the military organization on which Capt. Richey relied for supplies was severely disorganized and, in some cases, outright hostile to him.

In support of his petition to the OSRB, Capt. Richey provided five letters from other officers who had observed his performance. All of these letters concurred with Capt. Richey's assessment that the squadron had severe maintenance problems prior to his arrival, that he received little support from his superiors, and added that during his tenure, the squadron underwent intensive training, adding to the wear-and-tear on the squadron's vehicles for which Capt. Richey was responsible.

In its review of Capt. Richey's appeal, the OSRB contacted the rater, Major Speakes, and the senior rater; however, it did not contact Capt. Richey or any of his witnesses. Major Speakes told the OSRB that Capt. Richey had performed poorly during gunnery and field training exercises and that he "had great difficulty in managing available maintenance resources/assets." Admin. Rec. at 36. In addition, Major Speakes noted that Capt. Richey was often unavailable at times when he was needed. Furthermore, Major Speakes stated that he had given Capt. Richey formal counseling on his shortcomings, and that Capt. Richey responded that "he knew he had some problems in doing the job." Id. Similarly, the senior rater told the OSRB that Capt. Richey had difficulty dealing with people and team-building, and was "overwhelmed" by his responsibility. Id. Finally, the senior rater corroborated Major Speakes' impression that Capt. Richey was unavailable when needed.

After hospitably reviewing some of the evidence, i.e., the OSRB failed to interview Capt. Richey or any of his five witnesses, it found that the 1989 OER was not substantially inaccurate or unjust, and refused to delete the OER. The OSRB stated the following grounds for its November 18, 1992 decision: (i) the rating officials were able to clearly articulate reasons for the adverse evaluation, and (ii) Capt. Richey's witnesses did not occupy the same position as the raters, and, therefore, the OSRB gave the witnesses' statements substantially less credibility than the raters' statements.

Following the OSRB's ruling, Capt. Richey petitioned the ABCMR for removal of the 1989 OER. After reviewing the report prepared by the OSRB and the letters submitted by Capt. Richey in support of his position, the ABCMR, prior to Capt. Richey's first application for promotion in 1994, denied this petition. The ABCMR blandly concluded that the 1989 OER was not substantially inaccurate or unjust, and refused to delete the adverse OER, based on two findings. First, the ABCMR found that Capt. Richey had not submitted sufficient evidence to demonstrate that the adverse OER contained any serious administrative deficiency or was prepared in violation of applicable regulations. Second, it found that the OER appeared to present a fair and objective appraisal of Capt. Richey's performance and potential.

## 2. The 1991 OER

When rated for the period January 29, 1991 through April 18, 1991, Capt. Richey was serving in Southwest Asia in Operation Desert Storm. He received a "below center of mass" rating for this period, which means that he was rated below the average of his contemporaries. As with the 1989 OER, Capt. Richey again petitioned the OSRB for amendment of the 1991 OER on the ground that the OER was substantially inaccurate.

Pursuant to Army regulations, senior raters are required to evaluate the potential of officers by comparing them with officers of the same grade, *i.e.,* their contemporaries. Army Reg. 623–105 ¶ 4–16(b). To rate potential, the senior rater puts an X in one of nine vertically-stacked blocks. For example, the top block is the block indicating the highest level and should represent the top 1% of rated officers. *Id.* at ¶ 4–16(c). Additionally, the Army compiles a history of the senior rater's rating history of officers in the same grade, known as a "profile." *Id.* at ¶ 4–16(d)(5)(a). The purpose of the profile is "to place the rated officer's OER in perspective by revealing the senior rater's general rating tendency." *Id.* If the senior rater has properly evaluated all similarly-graded officers, his profile should approximate a bell-shaped distribution curve. *Id.* at ¶ 4–16(b). A "below center of mass" rating occurs when a rated officer is placed in a block below where the majority of rated officers are ranked in the senior rater's profile. *See generally* Admin. Rec. at 68. This rating indicates that, in the opinion of the senior rater, an officer performed inferior to his peers. The "below center of mass" rating places an officer further back in the queue for promotion.

In his initial petition to the OSRB, Capt. Richey contended that the senior rater had "mismanaged" his profile. As support for this contention, plaintiff alleged that the senior rater, for example, had generally scored officers too high. For example, of 9 officers in the same grade as Capt. Richey, 5 were placed in block one, and four, including Capt. Richey, were placed in block two. Admin. Rec. at 276. Because the senior rater's scores of rated officers was, on average, too high, his rated scores did not fall along a bell curve, and, as such, Capt. Richey's stated block two rating places him "below center of mass."

Accompanying the petition, Capt. Richey submitted a letter from the senior rater indicating that the senior rater's intent was to place Capt. Richey "in the middle of the pack," in other words, an average rating. Admin. Rec. at 56. In addition, Capt. Richey submitted a letter from his rater that states that he should have received a "center of mass" rating. The rater further stated that Capt. Richey had been—

> ... fully capable and proficient in those duties and tasks that were assigned to him.... Additionally, I am personally aware that Colonel Riley, the senior rater, felt that CPT Richey was a solid performer that could be depended on. My assessment of CPT Richey is that ... he performed well and should have achieved a Center of Mass rating.

Admin. Rec. at 57.

The OSRB, notwithstanding, denied Capt. Richey's request for amendment of his record on the ground that he failed to provide clear and convincing evidence to support the contention that the OER was inaccurate. Surprisingly, in rendering its August 17, 1993 opinion, the OSRB did not contact either of the rating officials prior to reaching its ultimate conclusion on the 1991 OER.

Consequently, Capt. Richey appealed the OSRB's decision to the ABCMR alleging substantial error. While noting that the OSRB had found that the senior rater had mismanaged his profile, the ABCMR, on July 20, 1994, denied Capt. Richey relief on three grounds. First, the ABCMR stated that Capt. Richey had failed to show that the contested OER had been prepared in a manner that did not comply with applicable regulations and policy. Second, the ABCMR determined that he had failed to show that "the rating officials' evaluations represented other than their objective judgment and considered opinions at the time they prepared the contested OER...." Admin. Rec. at 70. Finally, the ABCMR concluded that the 1991 OER represented a fair, objective, and valid appraisal of Capt. Richey's demonstrated

performance and potential during the rated period.

### 3. Procedural Posture

As a result of the forgoing, Capt. Richey filed a two-count complaint in this court on July 15, 1997. In count one, he alleges that the ABCMR acted in an arbitrary and capricious manner when it failed to remove the 1989 OER from his record. In count two, Capt. Richey alleges that the 1991 OER was not processed in accordance with military regulations, and that the ABCMR acted in an arbitrary and capricious manner when it failed to amend the 1991 OER to reflect that he was "center of mass." Accordingly, Capt. Richey contends that the ABCMR's failure to act in both these instances caused his 1994 and 1995 applications for promotion from Captain to Major to be denied, thus leading to his involuntary separation from active military duty on April 1, 1996.

In his prayer for relief, Capt. Richey requests this court to: (i) award him all pay and allowances due him occasioned by the ABCMR's failure to remove the 1989 OER and failure to amend the 1991 OER, and correct his military records; (ii) reinstate him to active military duty to the rank of Captain; and (iii) award him his costs and attorneys' fees.

Pursuant to Rule 56.1 of the rules of this court, the government filed a motion for judgment on the administrative record on October 31, 1997, as to both counts one and two. Regarding count one, the government argues that the ABCMR's decision to retain the 1989 OER in Capt. Richey's record was not arbitrary or capricious because the ABCMR considered the rationale of the OSRB and the supporting statements that Capt. Richey submitted, and, as such there is substantial evidence in the record for the ABCMR's decision. In response to count two regarding the 1991 OER, the government argues that Capt. Richey failed to prove that the ABCMR's decision declining

to amend the report was arbitrary or capricious. According to the government, Capt. Richey was evaluated pursuant to Army guidelines, and the senior rater's mismanagement of his profile was harmless error.

On February 20, 1998, Capt. Richey filed an opposition to the government's motion and also filed a cross-motion for judgment on the administrative record. Regarding count one, Capt. Richey argues that the 1989 OER is substantially inaccurate because it reflects external circumstances over which he had no control and that adversely affected his job performance. He further argues that Army regulations require that a rater render an *objective* evaluation, and that the 1989 evaluation was not objective because it reflects the negative relationship between the rater and Capt. Richey. He also contends that the ABCMR's failure to make these findings and its failure to remove the OER from his record was an arbitrary and capricious act which primarily caused his involuntary discharge from the Army.

Regarding count two, Capt. Richey argues that his rating was lowered from "center of mass" to "below center of mass" by a method not contemplated by Army procedures and is therefore substantially inaccurate. As such, Capt. Richey contends that the ABCMR's decision to retain the 1991 OER in its original form was arbitrary and capricious, causing his involuntary discharge from the Army on April 1, 1996. Accordingly, by his cross-motion for judgment on the administrative record, Capt. Richey requests that the court grant him the relief stated in his July 15, 1997 complaint.

The court initially addressed these motions in its opinion (44 Fed.Cl. 577) filed on August 26, 1999, applying the standards expressed in *Hary v. United States*, 223 Ct.Cl. 10, 618 F.2d 704 (Cl.Ct.1980). *Hary* holds that in order for a plaintiff to prove by clear and convincing evidence [3] that an action by a military promotion board was arbitrary, ca-

---

**3.** A plaintiff prevails, under the clear and convincing standard, if he is able to convince the fact finder that his factual contentions are "highly probable," or, as stated by the Supreme Court, if the evidence offered by the plaintiff "instantly tilt[s] the evidentiary scales in the affirmative

when weighed against the evidence ... offered in opposition." *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984); *see Price v. Symsek,* 988 F.2d 1187, 1191 (Fed. Cir.1993).

pricious, or unsupported by the evidence, as Capt. Richey contends here, he must prove: (i) a legal error or injustice; and (ii) an adequate nexus [4] between the error and the nonselection for promotion. *Id.* at 706.

Applying this test to the issue regarding the 1989 OER, the court found in its August 1999 opinion that:

> [T]he administrative record is deficient in that this court cannot properly determine from said record the merits of . . . [Capt.] Richey's contentions, which, if true, would appear to indicate that the OER was based on a gross material error of fact or was contrary to all evidence, such that failure to correct such error rises to the level of legal error on the part of the Correction Board [ABCMR].
>
> \* \* \* \* \* \*
>
> Additionally, even if we were to find that the 1989 adverse OER was in error, the administrative record does not indicate whether there is a nexus between the 1989 OER and . . . [Capt.] Richey's nonpromotion.

*Richey,* 44 Fed.Cl. at 584.

Applying this test to the issue regarding the 1991 OER, the court also found in the August 1999 opinion that:

> For the reasons cited above, . . . [Capt.] Richey has proven by clear and convincing evidence that the Correction Board [ABCMR] committed legal error when it failed to amend the 1991 OER. He has thus satisfied the first element of proving that the Correction Board's [ABCMR's] action was arbitrary and capricious. . . . [but] . . . [Capt.] Richey has offered no proof beyond his undisputed allegations that the 1991 OER was a factor in his involuntary honorable discharge subsequent to two passovers for promotion. . . . Therefore, we further request the Correction Board [ABCMR] to make findings regarding the nexus between the 1991 OER,

which we find to be in error, and . . . [Capt.] Richey's nonpromotion.

*Id.* at 587.

While the court found legal error regarding the 1991 OER and substantial support for legal error regarding the 1989 OER, it stopped short of finding a nexus between said errors and Capt. Richey's nonpromotion. As a result we did not order immediate relief for him. Instead, we remanded the case to the ABCMR for specific numbered factual findings consistent with said rulings, *supra.* The remand order stated the following, *in haec verba:*

> The issues to be addressed [regarding the 1989 OER] are as follows:
>
> (i) the extent to which there were external circumstances that could have affected . . . [Capt.] Richey's job performance, including evidence of:
>
> > (a) maintenance problems in the squadron prior to his tenure;
> >
> > (b) "micro-managing" of . . . [Capt.] Richey by his rater;
> >
> > (c) incompetent personnel under . . . [Capt.] Richey's command;
> >
> > (d) severe disorganization of the military organization upon which he relied for supplies; and
> >
> > (e) intensive training of the squadron accounting for extra wear-and-tear on the vehicles under . . . [Capt.] Richey's care;
>
> (ii) the degree to which the rater was biased against . . . [Capt.] Richey because of his need for a scapegoat for the unit's maintenance problems; and
>
> (iii) the effect of the 1989 adverse OER, which will be assumed defective, on . . . [Capt.] Richey's nonpromotion, specifically:
>
> > (a) whether the presence of the 1989 OER in . . . [Capt.] Richey's record makes that record appear worse than it would absent the 1989 OER; and
> >
> > (b) whether . . . [Capt.] Richey's comparative position before the selection

---

4. The nexus requirement is not a "but for" test; a plaintiff does not have the burden of showing a conclusive causal connection, or that the board's illegal actions alone led to the nonpromotion and subsequent discharge. *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 814 (1979).

boards was such that, even assuming that there was some prejudice associated with the 1989 OER, it was unlikely that he would have been promoted.

The Correction Board [ABCMR], in the process of addressing the foregoing issues, shall take oral testimony from such witnesses identified and/or presented by ... [Capt.] Richey.

\* \* \* \* \* \*

Specifically, we direct the Correction Board [ABCMR] to address the following two issues [regarding the 1991 OER]:

(i) whether the presence of the 1991 OER's below center of mass rating in ... [Capt.] Richey's record makes that record appear worse than it would absent the 1991 OER; and

(ii) whether ... [Capt.] Richey's comparative position before the selection boards was such that, even assuming that there was some prejudice associated with the 1991 below center of mass rating, it was unlikely that he would have been promoted.

*Id.* at 585, 587.

Thereafter, the ABCMR held formal hearings regarding the 1991 and 1989 OERs, respectively, on November 10, 1999 and December 22, 1999. With regard to the 1991 OER, the ABCMR held that it was substantially inaccurate because of procedural *error* on the part of the senior rater. Accordingly, the ABCMR ordered that it be corrected exactly as requested by plaintiff, *i.e.*, that

plaintiff receive a "top block" or highest rating for the period.

Regarding the 1989 OER, the ABCMR ruled that it was not substantially inaccurate and should remain the same. The original 1989 OER reflects negatively on plaintiff and, as we stated in our earlier opinion, there is strong indication in the administrative record that, at best, it was not prepared in accordance with Army regulations and, at worst, it constituted legal error on the part of defendant. In an interesting turn of events, the Assistant Secretary of Army Review Boards ("the Secretary") agreed with this conclusion, and on February 15, 2000, overruled the ABCMR's decision concerning the 1989 OER, ordering that said OER be deleted from plaintiff's record. He also ordered that a non-prejudicial statement concerning the period in question be inserted into Capt. Richey's record explaining the lack of an OER for that period of time.

In response to the decision by the Secretary to remove the 1989 OER, its own decision to correct the error in the 1991 OER, and this court's order of August 26, 1999 remanding the case for specific findings, the ABCMR, pursuant to 10 U.S.C. § 628(b),[5] submitted Capt. Richey's application for promotion to Major, together with his entire record, to four separate Special Selection Boards ("SSBs") for a decision regarding whether plaintiff should be promoted. *See Porter v. United States*, 163 F.3d 1304 (1998). This procedure, the court notes, is within the ABCMR's lawful purview to undertake. *Id.* at 1306.

---

5. 10 U.S.C. § 628(b) states:

(b) **Persons considered by promotion boards in unfair manner.**—(1) If the Secretary of the military department concerned determines, in the case of a person who was considered for selection for promotion by a promotion board but was not selected, that there was material unfairness with respect to that person, the Secretary may convene a special selection board under this subsection to determine whether that person (whether or not then on active duty) should be recommended for promotion. In order to determine that there was material unfairness, the Secretary must determine that—

(A) the action of the promotion board that considered the person was contrary to law or involved material error of fact or material administrative error; or

(B) the board did not have before it for its consideration material information.

(2) A special selection board convened under paragraph (1) shall consider the record of the person whose name was referred to it for consideration as that record, if corrected, would have appeared to the board that considered him. That record shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him.

(3) If a special selection board convened under paragraph (1) does not recommend for promotion a person whose name was referred to it for consideration, the person incurs no additional failure of selection for promotion.

The first two SSBs, convened on February 11 and March 7, 2000, respectively, considered plaintiff's application with the corrected 1991 OER and the *original* 1989 OER, holding that plaintiff's application for promotion should be denied. On the other hand, the second two SSBs, convened on April 17 and April 27, 2000, respectively, considered plaintiff's application for promotion with the corrected 1991 OER only and not with the 1989 OER, as per the Secretary's decision. These final two SSBs also held that plaintiff's application for promotion should be denied.

The Army informed Capt. Richey of his non-selection by the four SSBs in two letters, dated March 31, 2000, and September 26, 2000, respectively, addressed to him from the U.S. Total Army Personnel Command ("PERSCOM"), the Army's human resources department. These letters are found at Admin. Rec. 596–97. We note that defendant incorrectly titles these letters as "Exhibit G—Special Selection Board Results." Admin. Rec. at 246.

Defendant initially notified the court of the SSBs' decisions by its status report filed on October 25, 2000, which states that: "[t]he final remaining selection Board ... has recently declined to select plaintiff for promotion, and plaintiff has been notified of this decision. With this decision, the matter is complete." Said status report did not contain any attachments whatsoever which would indicate to the court whether defendant or the SSBs [6] complied with the court's August 1999 order directing the ABCMR to make specific, numbered factual findings. As a result, the court ordered defendant, on November 21, 2000—(i) to file the SSBs' decisions in response to the court's August 1999 order, and (ii) to pointedly answer the question posed by plaintiff at the November 16, 2000 status conference, to wit, given the totality of plaintiff's record, would he have been promoted, in any event, if the contested OERs *had never been* issued against him.

Defendant filed its response to this second remand order on December 11, 2000. However, it did not contain either—(i) copies of the SSBs' decisions; (ii) proof that the ABCMR complied with the court's August 1999 order, or (iii) an answer to the question posed above. As such, plaintiff again objected to defendant's response thereto in his January 12, 2001 memorandum. Consequently, the court issued an order on February 21, 2001, again directing defendant to comply with the court's August 1999 order, reiterating the requirement that specific, numbered findings of fact be made.

Defendant responded to the February 21, 2001 order by filing, on April 23, 2001, *inter alia*, the following documents—(i) plaintiff's entire personnel record; (ii) the November 10, 1999 and December 22, 1999 decisions by the ABCMR; (iii) the two letters from PERSCOM, dated March 31, 2000 and September 26, 2000, addressed to plaintiff, regarding his nonselection; and (iv) the Secretary's decision to delete the 1989 OER from plaintiff's record. Notable, though, was the complete absence in this filing of the text of the four (4) SSBs' decisions.

Accordingly, the court was compelled to again request the text of the four SSBs' decisions in a final, fourth remand order, dated June 26, 2001. On June 29, 2001, defendant complied with said order and filed the text of the four SSBs' decisions. Apparently, these written decisions still do not fully answer the court's questions posed to defendant in our three prior remand orders as they are conclusory in nature, do not indicate what standards were used in rendering the decisions, and do not fully comply with the requirements of 10 U.S.C. § 628. As such, we are again at a point in this case where the parties' cross-motions for judgment on the administrative record are postured for decision, notwithstanding a protracted administrative record which is curiously incomplete. The following sections explicate the law we must apply in deciding said motions.

---

**6.** Additionally, there is no evidence in the administrative record, including the SSBs' actual written decisions, that the SSBs even followed the dictates of 10 U.S.C. § 628(b). Specifically, said statute requires the SSBs to compare Capt. Richey's employment record "with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the [original selection] board that considered him." 10 U.S.C. § 628(b)(2).

## DISCUSSION

### I. APPLICABLE LAW TO THE CASE AT BAR

#### A. *Motions for Judgment on the Administrative Record*

■ Motions for judgment on the administrative record are reviewed according to the same standards as motions for summary judgment. *See* RCFC 56.1(a); *Hoskins v. United States,* 40˙Fed.Cl. 259, 270 (1998). Accordingly, judgment on the administrative record is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Each party here must prove that there are no genuine issues of material fact regarding all relevant issues in contention. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, from our review of the administrative record, the court must decide, notwithstanding the parties' assertions, whether there are genuine issues of material fact regarding each issue. Of course, in evaluating the opposing party's motion for judgment on the administrative record, the court will draw "all justifiable inferences" in the non-movant's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. In other words, when we evaluate one party's motion for judgment, we must look at the evidence presented in the light most favorable to the opposing side.

■ Keeping these standards in mind, our review of the ABCMR's and SSBs' decisions are, at this posture, limited to the administrative record as presented in its final (fifth) form. *Long v. United States,* 12 Cl.Ct. 174, 176 (1987); *see also, Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985). If an administrative record is found to be deficient by a reviewing court, it is not the role of said court to fill in the gaps. *Long v. United States,* 12 Cl.Ct. 174, 177 (1987). Rather, the Supreme Court advises that—

> [i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, *except in rare circumstances,* is to remand to the agency for additional investigation or explanation.

*Florida Power & Light Co.,* 470 U.S. at 744, 105 S.Ct. 1598 (emphasis added). Therefore, having before it an administrative record that is lacking in some respects, would necessitate a court to remand the incomplete issues back to the administrative agency for further proceedings.

■ In the instant case, however, we have previously done so four separate times, *i.e.,* on August 26, 1999, November 21, 2000, February 21, 2001, and June 26, 2001, and, despite such circumstance, we are still faced with a record which does not fully respond to the issues raised by Capt. Richey, as noted *supra* at 9–10. The court has no reasonable basis to believe that a fifth remand will result in the fully completed administrative record we have heretofore sought. As a consequence, we hold that this case represents the "rare circumstance" noted in *Florida Power & Light Co.* above, where a decision on an incomplete administrative record is proper. Accordingly, we will decide the parties' motions on the basis of what we have before us.

#### B. *Standard of Review*

The court has jurisdiction over the subject matter of this case pursuant to the Tucker Act. While defendant does not question our jurisdiction, we believe it appropriate to quote the statute that grants us jurisdiction over this matter, which states, in relevant part, as follows:

**§ 1491. Claims against the United States generally**

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department. . . .

(2) To provide an entire remedy and to complete the relief afforded by the judgment [in paragraph (1) ], the court may, as an incident of and collateral to any such

judgment, issue orders *directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records,* and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, *the court shall have the power to remand appropriate matters* to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491 (emphasis added).

 In military personnel matters, such as here, a plaintiff has the burden of proving by clear and convincing evidence that the action of the military agency is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter,* 163 F.3d at 1312. The purpose of this rule is to require that an agency show the court that "[ the military] selection board [was] ... presented with a substantially complete and fair record" when it made its selection decision. *Id.* at 1311–12, *citing Sanders,* 594 F.2d at 814. In order to meet this burden, Capt. Richey must prove two elements: (i) a legal error or injustice in the ABCMR proceeding; and (ii) an adequate nexus or link between the error and some adverse action such as his nonselection for promotion. *Hary,* 618 F.2d at 706.

The first element, commission of a legal error by an administrative board, can be based on either "legal error or material factual error, or injustice amounting to such error...." *Sanders,* 594 F.2d at 813. An "injustice" might be based on the failure by the agency to correct either a gross material error of fact in an OER or to correct an action contrary to all evidence. *Id.* Failure to correct such errors, however, must be "arbitrary and capricious, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, and with monetary consequences. In such event, the abuse of administrative discretion rises to the level of legal error...." *Id.* If a plaintiff,

such as Capt. Richey, alleges that there was, indeed, a failure on the part of a promotions or corrections board to correct this type of gross material error, "federal courts [like the U.S. Court of Federal Claims] have the power and the duty to inquire whether a military discharge [as a result of said error] was properly issued under the Constitution, statutes, and [military] regulations." *Muse v. United States,* 21 Cl.Ct. 592, 600 (1990) (citation omitted).

This brings us to the second element—the nexus requirement. The plaintiff must either show that the error *substantially* affected the decision to separate him from active duty, or he must produce enough evidence to justify further inquiry by the court into the nexus between the legal error and the adverse action. *Hary,* 618 F.2d at 707. Our predecessor court has enunciated two questions to be addressed in passing on the nexus issue between a defective OER and an adverse action, which, the court notes, were posed to defendant on remand:

> First, does the presence of the defective OERs in plaintiff's record make that record appear worse than it would absent those OERs, so that in that sense he was prejudiced by the OERs? Second, was plaintiff's comparative position before the selection boards such that, even assuming that there was some prejudice associated with the defective OERs, *it was unlikely that he would have been promoted in any event* [the 'harmless error' test]?

*Id.* at 710; [7] *supra* at 10.

 The two-part test articulated above is highly deferential toward the decisions of the ABCMR and the SSBs. It reflects the fact that it is the executive branch, and not the courts, that is responsible for running the military. *Grieg v. United States,* 226 Ct.Cl. 258, 640 F.2d 1261, 1268 (1981), *citing Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Even if this court would come to a different conclusion based

7. While the *Porter* decision, mentioned above, apparently discards this 'harmless error' test in the context of a situation where an officer's employment record was submitted to an SSB pursuant to 10 U.S.C. § 628, as in our case, we find sufficient distinguishing factors between the instant case and *Porter* to have posed this question on remand to defendant. 163 F.3d at 1323. This position and our ultimate conclusion will be explained further in Section II, *infra* at 21.

on the same set of facts, we will not generally overturn a decision by a military review board absent a showing of legal error. *Sanders,* 594 F.2d at 814. The "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and ... courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). Thus, the determination of who is fit or unfit to serve in the military is a discretionary matter, firmly within the province of the military. *Orloff,* 345 U.S. at 93–94, 73 S.Ct. 534.

This deference, however, is not without limits. In 1992, in *Germano v. United States,* this court stated that:

> [while] the military is entitled to great deference in the administration of its affairs.... [n]onetheless, the case law also establishes that Congress has carved out a window for judicial review of such discretionary determinations by the military. *Judicial review would be meaningless if the deference to the military were abject or the review pro forma;* rather, the court is charged with examining the record to ascertain if an officer has met his burden of showing that the challenged military action was arbitrary, capricious, unsupported by substantial evidence, or in violation of the law. ·

26 Cl.Ct. 1446, 1459 (1992) (emphasis added).

Therefore, Capt. Richey's burden is a heavy one. He *must* produce evidence that "overcome[s] the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 594 F.2d at 813 (citations omitted). This presumption extends to officers responsible for the rating of other officers. *Guy v. United States,* 221 Ct.Cl. 427, 608 F.2d 867, 870 (1979).

■ Military procedures require that the rating process be as objective as possible. *Id.* at 870–71 ("[T]he general intent of [the regulations] is to ensure by every means possible that OERs be objective."). Our predecessor, the Court of Claims, recognized, of course, that even though perfect objectivity is impossible, there are factors that may adversely affect ratings that have "no business being in the rating process." *Id.* Among these improper factors is the bias that occurs when a rater lowers an officer's evaluation "for expediency personal to the rater's own interests." *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824, 828 (1979). An officer's challenge to an OER on the grounds that it was not objective, however, must overcome the strong, but rebuttable, presumption that administrators of the military discharge their duties "correctly, lawfully, and in good faith." *Sanders,* 594 F.2d at 813. Thus, as Capt. Richey's contentions concerning the 1989 OER have been held as true by the Secretary, *supra* at 10, it *may* be that the 1989 OER, which reflects an improper and prejudicial factor, *i.e.,* the rater's selfish desire to find a scapegoat for the maintenance problems of the squadron, was a substantial cause of his nonpromotions in 1994 and 1995. *Hary,* 618 F.2d at 707. Consequently, this bias, which has been established, is unquestionably legal error of the highest magnitude and, if there is an adequate nexus to Capt. Richey's subsequent nonpromotions, *i.e.,* a substantial cause, such would constitute grounds for remedial action by this court (the 'harmless error' test).

Section II of this opinion discusses the court's conclusions regarding the 1991 and 1989 OERs and their ultimate effect on Capt. Richey's nonpromotion. Furthermore, we render our final decision herein on the parties' motions for judgment on the administrative record solely with the record as developed thus far, with the understanding that seeking additional answers to our questions regarding said record would, as stated previously, most likely be an exercise in futility.

## II. THE COURT'S DECISION RE: THE PARTIES' CROSS–MOTIONS

### A. *The 1991 OER*

■ As stated *supra* at 7–8, the ABCMR initially held that: (i) Capt. Richey had failed to show that the 1991 OER was not prepared in compliance with applicable military regulations and policy; (ii) Capt. Richey failed to

submit evidence establishing that the OER represented anything other than the rating officials' objective judgment and considered opinions at the time that the officials prepared the OER, or that the officials exercised faulty judgment during the evaluation process; and (iii) the 1991 OER represented a fair, objective, and valid appraisal of Capt. Richey's demonstrated performance and potential during the rated period. Even though the ABCMR acknowledged the senior rater's mismanagement, it, nevertheless, found that the mismanagement had no effect on Capt. Richey's OER. As a result, defendant originally contended that the senior rater's mismanagement of plaintiff's profile was merely "harmless error," *not* legal error which *substantially* caused Capt. Richey's nonpromotions in 1994 and 1995 and his subsequent discharge on April 1, 1996.

Regarding these findings, we held in our August 26, 1999 opinion that the ABCMR's conclusions were unsupported by the evidence in the administrative record and constituted legal error. *Richey*, 44 Fed.Cl. at 586–87. Capt. Richey demonstrated to the satisfaction of this court that the 1991 OER was not prepared in compliance with applicable military regulations, and that the contested OER did not represent the objective judgment and considered opinion of the raters. *Id.* Supporting this position was the senior rater's intent to place Capt. Richey "in the middle of the pack." *Supra* at 7. Further supporting our conclusion was that the rater indicated, in a memorandum to the ABCMR, that "compared to other captains serving in the 3d Brigade, [Capt. Richey] performed well and should have achieved a Center of Mass rating." *Supra.*

As such, this court directed the ABCMR to correct the 1991 OER exactly as requested by Capt. Richey to reflect a "top block" rating. Thereafter, we remanded the issue regarding the nexus between the defective 1991 OER and Capt. Richey's 1994 and 1995 nonpromotions to the ABCMR for a full determination and explication of findings. *Id.* at 587. As stated earlier, the ABCMR did, indeed, correct the 1991 OER as ordered, and then, pursuant to 10 U.S.C. § 628(b),

submitted Capt. Richey's promotion application with the corrected 1991 OER to four (4) separate SSBs. *Supra* at 10–11. These SSBs apparently all concluded that Capt. Richey's application should be denied, informing him of such in two letters from PERSCOM, dated March 31, 2000 and September 26, 2000. Admin. Rec. at 596–97.

Defendant, however, has not, as per our previous orders, submitted to the court any document clearly indicating what standards the SSBs applied in rendering their decisions and whether or not they fully complied with all of the dictates of 10 U.S.C. § 628.[8] While this tends to show that the administrative record is still not fully complete, the court has misgivings that yet a further request for this information will lead to the answers to our questions. Even so, we are able to render what we believe is a substantially just and supportable decision on this issue with what we have now in our possession.

First, the 1991 OER contains numerous positive statements about Capt. Richey in the "Comments" section. For example, it states:

CPT Richey has performed well.... Captain Richey's efforts in seeking this assignment and his enthusiasm while here are especially commended. * * * Solid performance by an energetic mission oriented officer. CPT Richey hit the ground running and hasn't stopped.... CPT Richey contributed directly to the success of this Brigade in offensive operations against the Republican Guards [sic] Forces Command of the Iraqi Army. The experience gained here will serve him well in future assignments. Assign ASAP to an Armor Battalion and then to command of a Tank Company.

Admin. Rec. at 276. These positive statements were contained in the original 1991 OER and they remained in the corrected 1991 OER. There are no negative statements about plaintiff in said OER.

Second, a review of the summary of all of Capt. Richey's OERs from 1984 to 1993 indicates to the court that he was generally rated near the mean of his peers. Admin. Rec. at 318. The instant uncorrected 1991 OER had

---

8. *See* 10 U.S.C. § 628(b) previously quoted in footnotes 5 and 6, *supra.*

placed him fourth out of nine rated officers. Admin. Rec. at 276. We find that this rating even uncorrected, is not so outside Capt. Richey's norm as to have likely had a substantial effect on the 1994 and 1995 promotion boards' decisions to deny him promotion.

Finally and most importantly, the ABCMR did, in fact, correct Capt. Richey's 1991 OER by giving him a "top block" rating, exactly as he requested. We note that this rating could actually place Capt. Richey even higher than the "middle of the pack"of his contemporaries in 1991. *See supra* at 7. What this indicates is that, eventually, the ABCMR, with a little prompting by the court, gave Capt. Richey all he had asked for regarding the 1991 OER. It then submitted his application to four (4) separate SSBs to further pass on his request for promotion with the corrected 1991 OER.

Accordingly, while the court still has some doubts regarding the process implemented by the SSBs due to the lack of information submitted to us, we will defer to their ultimate conclusion that Capt. Richey would still not have been promoted in 1994 and 1995 had the 1991 OER contained a "top block" rather than a "second block" rating. We do this considering that the "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and ... courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig*, 719 F.2d at 1156. The issue of the instant OER and its nexus to plaintiff's nonpromotion, in light of defendant's most recent actions, certainly represents a case where reasonable minds could differ.

Though we give great deference to the Army's decision-making power and respect its ultimate conclusion concerning the 1991 OER, we are not so confident in its procedures and conclusions regarding the 1989 OER, which is fraught with uncertainty and apparent error. The following section dis-cusses this issue and expresses our ultimate conclusion rendering remedial action.

### B. *The 1989 OER*

■ As discussed *supra* at 6, in responding to Capt. Richey's petition to have the 1989 OER removed from his records, the ABCMR initially held, prior to Capt. Richey's first application for promotion in 1994, that the 1989 OER was not substantially inaccurate or unjust. As such, the ABCMR refused to remove the adverse OER. Supporting this conclusion, the ABCMR found that: (i) Capt. Richey had not submitted sufficient evidence to demonstrate that the adverse OER contained any serious administrative deficiency; and (ii) the OER appeared to present a fair and objective appraisal of Capt. Richey's performance and potential.

In reviewing the above-referenced ABCMR's decision, this court found, in its August 26, 1999 opinion, a total absence of any meaningful effort by it to seriously consider Capt. Richey's allegations, namely, whether there was probative evidence of—(i) previous mismanagement of the squadron; (ii) "micro-management" of him by his rater; (iii) incompetent personnel under his command; (iv) severe disorganization of the military organization upon which he relied for supplies; and (v) hostility and bias of the rater against him. Furthermore, the ABCMR, when it referred to Capt. Richey's witnesses, brushed them off and sought to discredit them, unjustifiably, with the self-serving and cryptic statement that said witnesses did not "occupy vantage points similar to the rating officials." Admin. Rec. at 46. In other words, this court believed that defendant had merely given plaintiff's evidence "short-shrift," without a rational basis therefor. Said conduct by the ABCMR can reasonably be characterized as arbitrary and capricious. We also found that there was strong indication in the record that the rater was biased and that he prepared the 1989 OER in contravention to military regulations.[9] As a result, this court held in its August 1999 opinion that it simply could not evaluate whether the ABCMR's denial of

---

9. Army Reg. 623–105 ¶ 4–2(d) states: "[r]ating officials must make honest and fair evaluations of the officers under their supervision.... this evaluation must give full credit to the rated officer for his or her achievements and potential."

Capt. Richey's petition was based on gross material error of fact, or was contrary to all evidence, because the administrative record failed to provide this court with an objective analysis of the alleged facts.

Consequently, by our opinion of August 26, 1999, we remanded the issues regarding the 1989 OER to the ABCMR for specific findings and conclusions. *See supra* at 9. In response to this remand order, the ABCMR held a formal hearing on the 1989 OER on December 22, 1999, and thereafter rendered a written decision thereon. Although the decision on the hearing substantially addressed the court's August 1999 order, the questions to be resolved by the ABCMR on remand were answered only in a conclusory fashion with little factual analysis. For example, the most important determination requested in the August 1999 opinion has still not been adequately answered, to wit, "whether ... [Capt.] Richey's comparative position before the selection boards was such that, even assuming that there was some prejudice associated with the 1989 OER, it was unlikely that he would have been promoted." *Richey,* 44 Fed.Cl. at 585; *supra* at 10.

This question regarding the 'nexus' between the erroneous and adverse 1989 OER and Capt. Richey's nonpromotion ('the harmless error' test) was responded to by the ABCMR in a conclusory fashion with the following statement:

> Promotion boards [OSRB] do not disclose the reasons for selection or nonselection and the Board [ABCMR] does not have the luxury of reviewing all of the files reviewed by a promotion board. While the Board cannot determine whether or not the contested OER was the resultant cause of his nonselection for promotion to the rank of major, the Board is aware that in the drawdown that is occurring throughout the Department and the Armed Forces, many very qualified officers are not being selected for promotion due to the limited number of resources/positions available. While this is unfortunate, such nonselection does not necessarily constitute an error or injustice on the part of the Department.

Admin. Rec. at 476 (December 22, 1999 ABCMR decision).

Also, the court notes that defendant completely failed to respond to the court's following directive: "(i) [r]egarding plaintiff's allegations concerning the 1989 OER's effect on his discharge, defendant shall fully explicate: the extent to which there were external circumstances that could have affected ... [Capt.] Richey's job performance, including evidence of ... (d) severe disorganization of the military organization upon which he relied for supplies." *Richey,* 44 Fed.Cl. at 585; *see supra* at 9. Finally, defendant failed to "take oral testimony from such witnesses identified and/or presented by ... [Capt.] Richey" as directed by the August 1999 opinion. *Id.; see supra* at 10.

The ABCMR concluded, in its decision on the December 22, 1999 hearing, that the 1989 OER was not defective and should remain unmodified. As we stated earlier, this decision was overruled by the Secretary on February 15, 2000, *supra* at 10, and the 1989 OER was deemed defective. He stated the following in his decision:

> On 22 December 1999, the Army Board for Correction of Military Records recommended by a vote of 3–2, that relief be denied in this case. Upon review of the record and applicable law, however, I have determined the preponderance of *the evidence indicates the challenged adverse Officer Evaluation Report was unfair* because it penalized applicant unjustly for external factors beyond his control. Therefore, the best interests of justice are served by granting relief.

Admin. Rec. at 469 (emphasis added). Accordingly, the Secretary removed the 1989 OER from Capt. Richey's employment record and replaced it with an explanatory letter non-prejudicial to Capt. Richey. We hold that this action is an obvious *concession by defendant* that the decision by the ABCMR to keep the unmodified 1989 OER in Capt. Richey's record constitutes *clear legal error.*

As a result of the Secretary's determination of clear error and this court's previous order remanding the aforementioned issues for specific findings, the ABCMR submitted Capt. Richey's application to four (4) SSBs,

pursuant to 10 U.S.C. § 628(b). Admin. Rec. at 468. The SSBs met and rendered their decisions on February 11, March 7, April 17, and April 27, 2000, respectively. These SSBs, as we stated earlier, reviewed Capt. Richey's application for reinstatement and promotion to Major, and all four (4) SSBs denied Capt. Richey's application. We note that the decisions each SSB rendered were only one (1) page in length, contained no analysis of the facts, expressed little of substance in the way of explanation supporting the conclusions, and, except for noting the different members on each Board, were virtually identical in all material respects. In other words, the SSBs' decisions submitted to us were wholly conclusory and, apparently, a 'rubber stamping' of the ABCMR's ultimate conclusion to deny Capt. Richey relief.

Interestingly, only the last two SSBs reviewed Capt. Richey's application with the omission of the 1989 OER, even though the Secretary had rendered his official decision removing said OER from Capt. Richey's record on February 15, 2000. As such, the court is at a loss to understand why the second SSB, which met on March 7, 2000, reviewed Capt. Richey's application with the inclusion of the 1989 OER. Though the reason for this situation is not apparent from the administrative record, we will, however, simply focus on the final two (2) SSBs and the ultimate conclusion made regarding Capt. Richey's application in its final form, i.e., without the inclusion of the 1989 OER.

Determining what standards the SSBs used to arrive at their decisions has been quite a herculean effort on the part of the court, as we had to request the text of the SSBs' decisions from defendant on three separate occasions, to wit, November 21, 2000, February 21, 200, and June 26, 2001, before finally receiving them. Unfortunately, the text of the four (4) SSBs' decisions do not show what standards they used and how they justified making their determination denying Capt. Richey's application for promotion.

Furthermore, it appears that the third SSB put very little time in analyzing Capt. Richey's application, as the record indicates that it met for only thirty minutes. Therefore, the court has no way of knowing what standards the SSBs implemented in rendering their decisions, nor do we have any findings of fact made by the SSBs regarding Capt. Richey's application.

Indeed, we do not even know if the SSBs followed the dictates of 10 U.S.C. § 628(b), which requires all Special Selection Boards to specifically indicate: "[t]hat [the] record [of plaintiff's employment history] shall be compared with the records of a *sampling* of those officers of the same competitive category who were recommended for promotion, *and* those officers who were not recommended for promotion by the board that considered him [the plaintiff]." (emphasis added). There is, in fact, a total want of evidence in the record establishing that defendant complied with this requirement.[10]

Without an indication of strict compliance to all the requirements of 10 U.S.C. § 628, the court is unable to adequately gauge, as we must, whether *the process* implemented by the SSBs was fair. *Porter,* 163 F.3d at 1325 ("[T]he focus of attention of a civilian correction board ... *[is] to the fairness of the process by which an SSB has decided the promotion issue in a given instance."* (emphasis added).) While defendant may have properly submitted Capt. Richey's application for promotion to the four (4) SSBs pursuant to 10 U.S.C. § 628, and it is possible that the decisions of these Boards were fair, we are unable to determine if the evaluation process was, in fact, just with what defendant has submitted to this court.

While the Federal Circuit in *Porter* gives great deference to the SSB process, under 10 U.S.C. § 628, it provides that "[i]f an officer meets an SSB unsuccessfully and can point to a *material flaw in the SSB's procedures* arguably undermining the SSB's nonselection

---

10. As a consequence of this lack of evidence, the court is compelled to draw an adverse inference against the defendant regarding the existence of the required comparison of Capt. Richey to his contemporaries. *Paccon, Inc. v. United States,* 185 Ct.Cl. 24, 399 F.2d 162, 172 (1968) ("[I]n

... administrative proceedings the plaintiff has the ultimate burden of proof, but the defendant is charged with producing evidence peculiarly within its possession [or explaining its absence]; and failure to do so would normally lead to adverse inferences.").

judgment, he may petition the corrections board to alter or void the SSB's decision." *Id.* (emphasis added). *Porter* also states that "[a]fter an SSB has made its decision, the focus of the correction board's [ABCMR] attention ... is on whether *the process* by which the SSB reached its decision afforded the officer a 'reasonable determination' of his promotion prospects." *Id.* (emphasis added).

While this is a tougher standard for plaintiff to meet than the 'harmless error' question we previously posed on our first remand in August 1999, defendant has not proven that the SSBs' procedures were fair under the *Porter* analysis *supra*. For the court to merely rely on the naked conclusions of the SSBs, without an indication of what standards they used and whether they fully complied with the operative components of 10 U.S.C. § 628—without more—would render our power of judicial review "meaningless" and our "review pro forma." *Germano,* 26 Cl.Ct. at 1459. We simply cannot take this course of action.

This brings us to an apparent impasse as the court does not believe a fifth remand will likely generate answers to our questions previously posed to defendant. On the other hand, as stated earlier, we are required to respect the Army's "responsibility for determining who is fit or unfit to serve in the armed services." *Heisig,* 719 F.2d at 1156. In a similar vein, we do not seek to "make the court a super correction board." *Skinner,* 594 F.2d at 830. These obvious difficulties that we now face, though, are not insurmountable.

In confronting an analogous situation, the Court of Claims stated in *Beckham v. United States:*

> Assuming, however, that the Correction Board did use the correct legal standard, there is no satisfactory showing on the record that the Board's determination was based upon a balanced consideration of all the evidence available and presented. A *naked conclusion* and mere recitation that the opinion is based upon all of the evidence *without an analysis of the evidence in writing (as here)* is inimical to a rational system of administrative determination and ultimately inadequate. In these cir-

cumstances *(summary and sketchy findings and reasoning by the administrative Board)* we cannot give as much deference to the Board's determination as if it had given *detailed findings to support, and fuller explanations of the reason for, its conclusion.* We are compelled to look at the record without much help from the Board's opinion....

183 Ct.Cl. 628, 392 F.2d 619, 622–23 (1968) (citations omitted) (emphasis added). We find a parallel between the situation faced by the *Beckham* court and what we now face. Thus, we find *Beckham* instructive to us. Accordingly, we will render a decision herein with what we have before us as there are no remaining genuine questions of material fact which, we reasonably believe, could be answered with further remands, *see supra* at 12, and said decision, in our view, is the most just course of action considering the foregoing circumstances.

Therefore, we hold that Capt. Richey's prior two nonselections are hereby void, and, as such, his original discharge of April 1, 1996, is rendered invalid. Accordingly, he shall be reinstated to his former position of Captain in the Regular Army from the date of this invalid honorable discharge until such time as his record is properly passed upon by a Special Selection Board, or other duly authorized body, with a reasoned and fully expressed decision indicating that his application for promotion or permanent rank was evaluated fairly as required by law. Additionally, we order that any subsequent decision by the Army regarding any prospective request by Capt. Richey for promotion is *not* to be applied retroactively to a date prior to this opinion.

We so hold as a result of the following factors: (1) the administrative record strongly indicates that the 1989 OER, and the OSRB's and subsequent ABCMR's decisions regarding such, were clear legal error; (2) defendant has effectively conceded that the 1989 OER and ABCMR's decisions were clear legal error; (3) defendant has failed to fully answer several of the questions posed by the court in its four remand orders, *supra* at 9, and is unlikely to do so in any event, thus, we are unable to properly determine if

the clear legal error committed by defendant was 'harmless error' to Capt. Richey under the *Hary* test enunciated by our first opinion in this case; (4) the SSBs' subsequent decisions denying Capt. Richey promotion are wholly conclusory and without explanation, which totally frustrates any attempt by this court to ascertain if said decisions were fairly rendered and in compliance with 10 U.S.C. § 628, a process we must follow in any meaningful review under the jurisdiction given us; (5) the court does not wish to act as a 'super correction board' by promoting Capt. Richey, thus usurping an ultimate decision by the Army regarding its personnel; and, finally, (6) because of defendant's obvious and admitted errors, defendant, not Capt. Richey, should properly bear the burden of the protracted procedure just undergone to determine his status.

We have already fully discussed factors (1) through (4) above in this opinion. Regarding factor (5) above, the court notes that, out of deference to the Army's ultimate decision to deny Capt. Richey promotion to Major, we will not order such since the ultimate decision to promote Capt. Richey must be the Army's—not this court's. *Orloff*, 345 U.S. at 93–94, 73 S.Ct. 534. "We can however remedy the legally defective *process* so as to put ... [plaintiff] into the position that he would have been had the proper procedures been followed ...." *Dodson v. United States*, 988 F.2d 1199, 1208 (Fed.Cir.1993) (emphasis added). Likewise, it will be the Army's ultimate choice, subsequent to the date of this opinion, whether to keep Capt. Richey in a permanent rank, promote him, or discharge him after following the proper legal procedures. Because Capt. Richey does not have an absolute right to be promoted, his improper discharge resulting from the Army's error only allows him the right to be reinstated and receive the attendant back pay and allowances. *Id.*

Regarding factor (6) above, defendant has conceded it made errors and the court believes that defendant, not plaintiff, should bear the burden therefor. Why defendant took over 10 years, to wit, from 1989 to February 15, 2000, the date of the Secretary's decision, to correct the legal errors in Capt. Richey's 1989 OER is simply without an adequate explanation. As this court stated, "[t]he defendant, with its far greater knowledge of the facts, statistics, and operations of the promotion selections process, is in a much better position to produce evidence and .... [should bear] the ultimate burden ... whose error and obfuscation of the evidence caused the problem in the first place." *Muse*, 21 Cl.Ct. at 613–14 (citations omitted). Consequently, in light of this point, and factors (1) through (5) above, we hereby, as previously stated, void Capt. Richey's 1994 and 1995 nonselections, hold his original involuntary discharge to be invalid, and reinstate him to the rank of Captain in the Regular Army from April 1, 1996, the date of his involuntary honorable discharge. Additionally, he shall receive all attendant back pay and benefits he is entitled to for the period April 1, 1996 to the date of this opinion, as determined by the Army. After the date of this opinion, it will be up to the Army to decide the ultimate question of Capt. Richey's continuing status, assuming that it follows the proper procedures under the law and relevant military regulations.

We order this relief pursuant to our jurisdiction under 28 U.S.C. § 1491(a)(2), which states in relevant part that: "the court may, as an incident of and collateral to any such judgment [against the United States for money damages] issue orders directing restoration to office or position ... and correction of applicable [military] records." *See supra* at 12–13. By this instant opinion, we are granting Capt. Richey the back pay and allowances due him as a result of his erroneous discharge, and, as incident thereto, ordering that he be reinstated to the rank of Captain from April 1, 1996.

As justification therefor, the former Court of Claims explained our jurisdiction on this issue by stating:

[W]e can and do review the actions of a selection board for legal error, which may result in an award of back pay for a board action which results in an illegal discharge. We also review correction board actions where it has been alleged that they, too, may have violated some statutory requirement or regulation. Where there is legal

error in such proceedings, we can also give back pay *and appropriate collateral relief under 28 U.S.C. § 1491.*

*Skinner,* 594 F.2d at 830 (emphasis added). Thus, we have jurisdiction to render the foregoing decision.

Our ruling here, however, is in some conflict with a portion of the *Porter* decision *supra.* In relevant part, *Porter*—(i) rejects the 'harmless error' test of *Sanders* and *Hary*—initially imposed by us on defendant; (ii) rejects the rationale behind voiding an officer's previous nonpromotions because they were originally based on erroneous OERs, thereby entitling that officer to reinstatement—which we have done here; and (iii) rules that SSBs' decisions 'relate back' to the original selection board's (OSRB's) decision(s) denying promotion so that the SSBs' decisions 'stand in place' of the original selection boards decision(s)—a position we reject because of the plain language of 10 U.S.C. § 628 and the distinguishing facts of this case. *See generally Porter v. United States,* 163 F.3d 1304 (1998); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979), *supra* at 9 note 4; *and Hary v. United States,* 223 Ct.Cl. 10, 618 F.2d 704 (Cl.Ct. 1980), *supra* at 8 (all cases here previously cited and explained). The *Porter* court based its holding on its interpretation of 10 U.S.C. § 628 and the established precedents heretofore mentioned in this opinion. 163 F.3d at 1310–11. We address each of these divergences seriatim.

First, the 'harmless error' test we originally imposed on defendant in our August 26, 1999 opinion has not been fully addressed by it, along with a number of other requests we made of defendant in this protracted case. Thus, we are not able to properly apply the test to Capt. Richey's situation. Moreover, defendant has failed to submit any documentation showing what standards the SSBs' applied in rendering their decisions denying Capt. Richey's application for promotion and whether the SSBs complied with all of the requirements of 10 U.S.C. § 628(b)(2), *supra* at 10 note 5, and 18.

Obviously, this is an extremely important distinction between the instant case and the circumstances in *Porter,* because that court,

apparently, had a complete record before it. *Id.* at 1310 (discussion of what the lower court reviewed). Indeed, the plaintiff in *Porter* "challenged the lawfulness of the ... SSBs in essence on the ground that he was deprived of a 'reasonable determination' because of alleged imperfections in the *benchmarks* and *scoring* used by the SSBs." *Id.* at 1325 (emphasis added). There are no 'benchmarks,' 'scores,' or any ascertainable rating system whatsoever, indicated in the scant SSB decisions that have been submitted to us.

We, on the other hand, must rule with what we have before us and we simply have no knowledge of how the SSBs made their decisions. All we have before us are the naked conclusions of the SSBs. Consequently, we cannot assume that the SSBs' *procedures* were correct and fair. As *Porter* stated, "[i]n order for an SSB to perform *lawfully,* it *must* yield—as Congress expected—a *reasonable determination* as to whether the officer would have been selected if his pertinent records had been properly considered by the prior board, unfettered by material error." *Id.* at 1324 (citation omitted) (emphasis added). A 'reasonable determination' is simply neither indicated by nor discernible from what has been submitted to us. We underscore that in deference to the military, we are *not* holding that Capt. Richey must be promoted, but only reinstated. The Army is free to pass on Capt. Richey's status at some point in the future, but *not* retroactively, provided, of course, that it follows the applicable law and military regulations. *See, e.g.,* 10 U.S.C. § 628; Army Reg. 600–8–29, 623–105; *Porter,* 163 F.3d 1304; *Sanders,* 219 Ct.Cl. 285, 594 F.2d 804; and *Hary,* 223 Ct.Cl. 10, 618 F.2d 704.

Second, when the *Porter* court rejected the 'arbitrary and capricious' rationale of the lower court, which supported voiding previously erroneous nonselection decisions, said court had before it, as did the lower court, a complete, if not procedurally correct, SSB decision. *Id.* at 1310. We have no such decision; we have only naked conclusions made by the SSBs involved, stated to us as four (4), nearly identical, one-page decisions.

As such, this court, indeed, has valid support to void the previously erroneous OSRB decisions—which were conceded as such by defendant—that led to Capt. Richey's discharge on April 1, 1996. *See* Admin. Rec. at 469 (Secretary's February 15, 2000 decision). Again, we are not ordering the Army to promote Capt. Richey, a decision which must be its own. What we are doing is rejecting the *process* that led to Capt. Richey's discharge and, therefore, we are ordering that he be reinstated. Defendant has thus far refused to furnish us adequate answers to our questions about its process in denying Capt. Richey's promotion and reinstatement. Allowing the Army unfettered discretion to do so without adequate explanation would render this court's review a nullity, thereby side-stepping the statutes that grant us jurisdiction to review these types of cases. *Germano*, 26 Cl.Ct. at 1459.

Third, *Porter* holds that an SSB's decision 'relates back' to the original selection board's decision, thereby substituting and superseding the original board's decision as if that decision had never occurred, thus making the officer's original discharge proper. *Id.* at 1315; 10 U.S.C. § 628(b)(2)–(3), (d)(2). If we had a factually complete and reasoned SSB decision before us, we could also hold as such, but we do not. We simply cannot rule that the instant SSBs' decisions relate back to the original OSRB's nonpromotion decisions without knowing the factual basis as to how the SSBs arrived at their decisions. There is no way for us to know if their process was, indeed, fair and, as such, we are very uncomfortable with the notion of ruling, in this context, that said SSB decisions should be substituted for former nonselection decisions.

Additionally, we do not believe 10 U.S.C. § 628 requires a relation back in all instances. *Porter* cites the following relevant portions of § 628, which it holds requires a 'relation back' of an SSB decision to the original selection board decision:

(b)(2) A special selection board convened under paragraph (1) shall consider the record of the person whose name was referred to it for consideration as that record, if corrected, *would have appeared to*

the [original selection] board that considered him. . . .

(b)(3) If a special selection board convened under paragraph (1) does not recommend for promotion a person whose name was referred to it for consideration, *the person incurs no additional failure of selection for promotion.*

\* \* \* \* \* \*

(d)(2) *A person who is appointed to the next higher grade as the result of the recommendation of a special selection board* convened under this section shall, upon that appointment, have the same date of rank, the same effective date for the pay and allowances of that grade, and the same position on the active-duty list *as he would have had if he had been recommended for promotion* to that grade by the board which should have considered, or which did consider, him.

10 U.S.C. § 628 (emphasis added); 163 F.3d at 1315.

In reviewing the above subsections, we begin our analysis with the "familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Neither subsection (b)(2) nor (b)(3) of § 628 specifically state in plain language that original and erroneous selection board decisions are replaced *ab initio* by future SSB decisions. Subsection (b)(2) merely provides that the SSB is required to review the officer's same record as the original selection board did, but with the necessary corrections. This provision was obviously intended to benefit an officer by insuring that the officer's records are not modified beyond the corrections, which were likely made to his/her benefit. In enacting this provision, the legislature clearly intended to assure fairness in the process to the officer's benefit.

Likewise, subsection (b)(3) appears to be solely intended to benefit the officer being rated. This provision provides that an SSB's

decision reviewing a former correction board's decision does not serve as an additional failure of promotion, which would therefore count as the second or even higher failure of promotion, thus triggering an officer's discharge. Furthermore, subsection (b)(3) does not state that an original selection board decision must 'relate back' to the original decision so that the original decision cannot be voided by a reviewing court.

As for subsection (d)(2), while it does state that the SSB decision 'relates back' to the original correction board decision, this provision only applies to an officer who *is actually promoted.* Subsection (d)(2), by its own words, does not apply to the instant situation, *i.e.,* where an officer is *denied* promotion. Again, we view this subsection as an obvious intention by the legislature to give officers seeking review and, eventually, promotion, a benefit, and not the Army.

Though for the most part dicta to its ultimate decision, we also find the following *Skinner* court's language compelling in rendering our ultimate holding for remedial action:

> This great nation does not wish to treat the personnel of its armed forces *with dishonor and indifference,* and the law will not permit it. The integrity and objectivity of the rating system go to the very heart of the military establishment's effectiveness, and all we do here is to preserve it as the statutes and authorized procedures contemplate and mandate. *This does not make the court a super correction board.* We are only discharging our own statutory duties. We do not interfere in military matters except where authorized to do so by statute. Fortunately, we are called upon to exercise that authority in relatively few cases because the military and correction boards generally fulfill their statutory responsibilities in an admirable way. It is not for us to second-guess

them. But, the presumption favoring the regularity of administrative actions is rebuttable and can be, and has been, overcome in cases much like the present one when it was found that the Correction Board and the Secretary were in error and guilty of arbitrary, capricious actions.

594 F.2d at 830 (emphasis added).

For this court to now treat Capt. Richey [11] with 'dishonor and indifference' by denying him all relief, after the efforts he has made since 1989 to correct defendant's errors in his employment history, on this record, would be most unjust, and, as shown above, would be contrary to established precedent. That we simply will not do. Again, and in conclusion, we refer the reader to note 1, *supra.*

## CONCLUSION

For all of the foregoing reasons, we hereby GRANT plaintiff's motion for judgment on the administrative record, and DENY defendant's motion for same, as follows: 1) plaintiff is hereby reinstated to active duty to his former position of Captain in the Regular Army, with his consent, beginning April 1, 1996, the date of his honorable discharge; 2) plaintiff shall receive all attendant back pay and benefits consistent with his reinstatement for the period April 1, 1996 to the date of this opinion, less applicable setoffs; and 3) plaintiff shall receive any and all additional relief as determined by the Secretary of the Army and to which plaintiff is entitled, consistent with this opinion, and as required by law and regulations.

Furthermore, the ABCMR shall determine the dollar amount of Capt. Richey's entitlement and shall file said information with this court within 45 days of the date of this opinion. Finally, upon receipt of said determination, and absent any objections by the parties within 15 days thereof, the Clerk shall forthwith enter judgment accordingly.

11. Indeed, Capt. Richey has demonstrated to the court, and the administrative record has so shown, that the numerous OERs in his employment history, which state that he is "honorable," "unquestionably loyal," and "highly dedicated," are correct. *See* Admin. Rec. *generally* at pp. 251–373, 399 F.2d 162 (plaintiff's employment record). Particularly illustrating this point is the following statements Capt. Richey made at the ABCMR's December 22, 1999 hearing: "[i]f I get called back into the Army as a captain, great. You know, I have no demand—there are not dollar signs rotating before my eyeballs, ma'am; I just want to get back in and be a soldier.... I just want to be back in uniform being a soldier." Admin. Rec. at 569.

**24**

Reasonable costs shall be assessed against defendant in favor of plaintiff.

IT IS SO ORDERED.